# In the

# United States Court of Appeals

## For the Seventh Circuit

—————

No. 01-2982

WESLEY R. TARPLEY,

*Plaintiff-Appellant,*

*v.*

ALLEN COUNTY, INDIANA, et al.,

*Defendants-Appellees.*

—————

**Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:99-CV-390—William C. Lee,** *Chief Judge.*

—————

SUBMITTED[*] OCTOBER 16, 2002—DECIDED DECEMBER 10, 2002

—————

Before BAUER, POSNER, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* This case concerns how far prison officials must go in furnishing religious materials to inmates in their custody. When plaintiff Wesley Tarpley was moved to the jail in Allen County, Indiana, the jail personnel confiscated his personal Bible and gave him a

———————————

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Federal Rule of Appellate Procedure 34(a)(2).

substitute Bible to use while he was there. The substitute was the same version of the Bible as Tarpley's own, but it did not include the interpretive commentary that Tarpley's copy had. Tarpley claims that the refusal of the jail to make available the version with commentary violated his First Amendment right to free exercise of religion. His lawsuit also includes a claim that the officials deprived him of his constitutionally guaranteed access to the courts. The district court granted summary judgment for the defendants on both counts, and we affirm.

## I

Tarpley arrived at the Allen County jail in July 1999. In the course of checking him into the jail, officials there put all of his personal property into a storage box, including a "New International Version" study Bible that Tarpley had obtained during his incarceration in New York. Tarpley asked the officials to return his "NIV" Bible to him, but they refused, citing their policy that prohibits inmates from retaining personal reading materials. Under that policy, the jail distributes reading materials to inmates (including novels, newspapers, and religious materials), but it does not permit them to establish or retain "possessory interests" in the materials. The jail implemented this policy to curb fights over who owned what and to avoid compensation claims if the materials were lost or stolen. In lieu of giving Tarpley his own NIV Bible, the jail's chaplain gave him access to a substitute Bible. The substitute was a textually identical NIV Bible, but unlike Tarpley's copy, it lacked interpretive commentary. In the weeks that followed, Tarpley repeatedly asked for his study NIV Bible, but, relying on their general policy, the jail officials refused to give it to him. This went on for about two months, when Tarpley was released from the jail. While he was incarcerated, Tarpley was allowed to keep the jail's Bible in his cell, and

he read it daily. Upon his release, the officials returned his personal Bible to him.

During his time at the Allen County jail, Tarpley was also trying to pursue some lawsuits he had filed, including a 1998 action against the Allen County officials, two TRO actions in the Northern District of Indiana, and a writ of habeas corpus in the Indiana state courts. He requested legal assistance in connection with all this, asking for case law, reference materials, legal forms, and access to a law library. The jail officials informed him that they did not have the materials he was requesting, nor did they have a law library. What Tarpley did have was the assistance of a court-appointed public defender, but that lawyer was representing him only in his criminal case.

On September 17, 1999, Tarpley filed a civil rights complaint under 42 U.S.C. § 1983 against Allen County, its Board of Commissioners, and various employees of the sheriff's department. The complaint asserted a number of claims, some of which are not relevant to this appeal. Tarpley is still pursuing two of them: first, that the defendants unconstitutionally interfered with his right freely to exercise his religion, and second, that they denied him meaningful access to the courts. After discovery, the district court entered summary judgment in favor of the defendants on all claims.

## II

We consider first Tarpley's argument that the district court erred with respect to his free exercise claim. He emphasizes in his brief that the stripped down version of the NIV Bible that he was furnished was not an acceptable replacement for his study version, and that access to the commentary was an important part of his religious observance. The Allen County defendants respond that, while

inmates in a jail or prison retain some First Amendment rights, those rights are qualified by the fact of incarceration and necessary penological measures. The balance struck here, they suggest, was both reasonable and constitutionally permissible.

Tarpley is correct that his right freely to exercise his religion does not evaporate entirely when he enters a jail. See *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) ("reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty"). On the other hand, the Allen County defendants are equally correct that his right is not unfettered. Prison restrictions that infringe on an inmate's exercise of his religion are permissible if they are reasonably related to a legitimate penological objective. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987); *Sasnett v. Litscher*, 197 F.3d 290, 292 (7th Cir. 1999).

Here, the Allen County jail had a general policy with respect to reading materials that had the effect of depriving Tarpley of the commentary to his NIV Bible. The questions before us are (1) whether, as applied here, the county's policy was rationally connected to a legitimate governmental interest, (2) whether inmate Tarpley had an alternative means to vindicate his free exercise rights, (3) what the effect of accommodating Tarpley's rights would be on the guards and other inmates, and (4) whether there were ready alternatives to the jail's regulation. *Turner*, 482 U.S. at 89-91.

We take these questions in turn. First, the jail's policy with respect to reading materials is reasonably related to the general interest in maintaining safe conditions and in preventing later disputes over lost or damaged items. These are well-established legitimate government concerns. See *O'Lone*, 482 U.S. at 348. Second, the jail furnished Tarpley

with alternative reading materials—indeed, the very version of the Bible he wanted—even though it was not a perfect substitute because it lacked the commentary. Although Tarpley declared under oath that the commentary was important to him because it enabled him to gain a greater understanding of "God's word," the same could be said about almost any part of the vast literature that explicates Biblical text. Tarpley has not asserted that the commentary furnished with the NIV Bible has the status of something like the Jewish Talmud—non-Biblical writings that have become part of the fundamental texts of the religion as a whole. We therefore have no occasion to decide what beyond the Bible the prison officials had to provide to him. Prisons are only required to make reasonable efforts to provide an opportunity for religious practice. See *Alston v. DeBruyn*, 13 F.3d 1036, 1039-40 (7th Cir. 1994). Under the circumstances here, giving Tarpley a copy of the NIV Bible that he could use in his cell offered him the essential material for his religious studies.

With respect to the third and fourth factors, once again Tarpley cannot show that the jail's policy was constitutionally flawed. There was no way that the jail could allow Tarpley to keep a personal book without compromising its general policy of avoiding disruption among inmates over ownership disputes. Because Tarpley did not demonstrate that the jail's general regulation with respect to reading materials, as applied here, unreasonably failed to accommodate his religious needs, we agree with the district court that summary judgment was appropriate for the defendants on this claim.

Tarpley's claim with respect to his access to the courts was also properly rejected. Tarpley acknowledges that he received legal assistance in his criminal case, through the public defender, but he complains that the jail's inadequate resources prevented him from pursuing other litigation. Prisoners seeking to vindicate their rights in court enjoy a

constitutional right of access to courts, and state actors may not impede their efforts to pursue legal claims. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). Nevertheless, *Lewis* holds that no violation of that right occurs in the absence of actual injury, by which it means the hindrance of efforts to pursue a nonfrivolous legal claim. *Id.* at 350-54; *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000). While the jail's lack of resources might have posed a theoretical problem, Tarpley cannot show the kind of concrete injury *Lewis* calls for. Instead, he says only that a long list of deficiencies prevented him from pursuing another civil rights action and a collateral attack on his sentence. He provides no detail about either of these cases. This omission is fatal to his claim: without evidence that the defendants prevented him from pursuing a nonfrivolous legal action, he cannot show that his constitutional right was violated. See *Lewis*, 518 U.S. at 350-54; *Nance v. Vieregge*, 147 F.3d 589, 591 (7th Cir. 1998).

The judgment of the district court is AFFIRMED.

A true Copy:

     Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—12-10-02