Dennis GONZALEZ, Plaintiff–
Appellant,

v.

Jon E. LITSCHER, et al., Defendants–
Appellees.

No. 02–4054.

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 9, 2003.*

Decided Oct. 21, 2003.

Before RIPPLE, MANION, and WILLIAMS, Circuit Judges.

## ORDER

Dennis Gonzalez is an inmate of the Wisconsin Secure Program Facility ("WSPF"), which was formerly known as the Supermax Correctional Institution. WSPF is a highly secure facility designed to house and manage the most difficult inmates in the Wisconsin prison system with the goal of eventually returning them to the general prison population. Mr. Gonzalez filed suit under 42 U.S.C. § 1983 against the Secretary of the Wisconsin Department of Corrections and several WSPF employees, alleging WSPF's restrictions on Native American religious practices and property violated his First and Fourteenth Amendment rights. The district court found in favor of the defendants on all claims, and Mr. Gonzalez filed this pro se appeal. We affirm the district court in all respects.

Mr. Gonzalez filed suit in November 2001. As relevant here, the district court in May 2002 granted summary judgment in favor of the defendants on Mr. Gonza-

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

lez's claim that adherents of other religions were treated more favorably in violation of his right to equal protection, but allowed Mr. Gonzalez to proceed to trial on his request for injunctive and declaratory relief based on his claim that the defendants had refused to allow him to possess a medicine bag, ceremonial drum, smoking pipe, and feathers. In their motion for summary judgment, the defendants had argued that Mr. Gonzalez was precluded from pursuing this claim by a class action consent decree involving WSPF in *Jones 'El v. Berge*, No. 00–C–421–C (W.D.Wis. Mar. 8, 2002). The district judge, who also presided in *Jones 'El*, noted that, although the consent decree contained a "religious articles provision," she had refused to certify a First Amendment claim concerning religious articles because it "necessarily required too much individualized analysis to be suitable for class treatment." Thus, she concluded that Mr. Gonzalez, a *Jones 'El* class member, had not been adequately represented on the religious articles claim in *Jones 'El* and was not precluded from raising his First Amendment claims in the present case.

■ On October 24, 2002, the district court held a bench trial on the First Amendment claim relating to Mr. Gonzalez's desire to possess a medicine bag, ceremonial drum, smoking pipe, and feathers. Following the trial, the court concluded that WSPF's restrictions allowing Native American inmates to possess only one religious text and one small braid of sweet grass were reasonably related to legitimate penological interests and, therefore, constitutional. Mr. Gonzalez's motion for reconsideration was denied and he appeals.

We begin with the First Amendment claim that went to trial. Following a bench trial, we review the district court's findings of fact for clear error and its conclusions of law de novo. *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1044 (7th Cir.2002). It is undisputed that WSPF officials severely limit the items of personal property an inmate may possess and that allowed items are secured in a storage unit outside of the inmate's cell until released to the inmate upon written request to the unit sergeant. It is also undisputed that Native American inmates of Mr. Gonzalez's security classification at WSPF are allowed to possess one religious text and one two-inch braid of sweet grass. The parties disagree, however, as to what restrictions are placed on the religious property of other religions. Mr. Gonzalez, citing general Wisconsin Department of Corrections regulations, asserts that Muslim inmates at WSPF are allowed to possess a rug, prayer cap, prayer beads and Koran; Buddhist inmates, beads and publications; Catholic inmates, the rosary; and Jewish inmates, phylacteries, yarmulke and talith. Mr. Gonzalez fails to note that the cited regulations, if applicable, would also allow Native American inmates to possess a medicine bag, sage, cedar, and a feather. Additionally, there is no support in the trial record for Mr. Gonzalez's assertion that WSPF inmates are allowed to possess the named religious property. The only evidence at trial was that religious property was restricted in accordance with Wisconsin Department of Corrections segregation policies. There was no evidence presented to show what those policies were.

Although it is true that an inmate's right to freely exercise his religion does not stop entirely at the prison door, that right is not unfettered. *Tarpley v. Allen County, Ind.*, 312 F.3d 895, 898 (7th Cir.2002). As the district court correctly noted, "[p]rison regulations that infringe on an inmate's exercise of his religion are permissible if

they are reasonably related to a legitimate penological objective." *Id.* We must therefore determine (1) whether, as applied, the policy is rationally connected to a legitimate government interest; (2) whether alternate means exist for the inmate's vindication of free exercise rights; (3) the effect of accommodating the inmate's rights; and (4) whether there were ready alternatives to the regulation. *Id.*

At trial, the defendants advanced several reasons for restricting religious property at WSPF, including the fact that such items could be used as weapons or to secrete contraband. Furthermore, Warden Berge, one of the defendants, testified that the prison could "manage really only so much property with a reasonable amount of resources, so we have to restrict it, partly for reasons of simply being able to track and being accountable for all the variety of property that exists." These are all legitimate penological goals. Indeed, the Supreme Court has characterized prison security as the central penological goal. *Thornburgh v. Abbott,* 490 U.S. 401, 415, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Additionally, Native American inmates are allowed alternate means of worship, including access to religious texts and the sweet grass braid, the ability to pray in their cells, and the ability at times to interact with Native American religious leaders. Under the facts of this case, Mr. Gonzalez fails to prove a free exercise violation.

■ To the extent that Mr. Gonzalez challenges the district court's grant of summary judgment in favor of the defendants on his equal protection claim, that argument fails as well. Although Mr. Gonzalez contends that WSPF inmates of other religions are treated more favorably than Native American inmates in the religious property they are allowed to possess, he offered no evidence in opposing the defendants' summary judgment motion to establish a triable issue on this question. In the materials submitted in support of their motion for summary judgment, the defendants included an affidavit from a WSPF unit sergeant which stated that along with other specific items of personal property, inmates at Mr. Gonzalez's security level are allowed to possess one "Bible, Koran, or equivalent soft covered religious book" and "religious items approved by the Chaplain" consistent with general Department of Corrections regulations. The *Jones 'El* consent decree was also submitted in support of the motion for summary judgment. According to that agreement, WSPF inmates shall normally be allowed to possess religious property as follows:

Protestant inmates—Bible on all levels—other books/literature depending on level

Muslim inmates—black kufi—24 × 40 prayer rug—Qur'an on all levels—other books/literature depending on level

Jewish inmates—Torah (Bible)—Talith (pocket size) on all levels—other books/literature depending on level

Catholic inmates—Bible—plastic, black rosary on all levels—other books/literature depending on level

Native American inmates—one braid of sweet grass (app. 2 inches long)—religious text on all levels—other books/literature depending on level

Wiccan inmates—religious text on all levels—other books/literature depending on level

Buddhist inmates—religious text on all levels—other books/literature depending on level.

Thus, the record evidence shows that inmates of all religions are subject to similar restrictions with respect to religious property, so it could not have been error to

grant summary judgment for the defendants.

Mr. Gonzalez raises two additional issues, the American Indian Religious Freedom Act, 42 U.S.C. § 1996, and the collateral effect of the *Jones 'El* settlement, in a perfunctory manner. As presented, these issues afford no other grounds for relief. Accordingly, the decision of the district court is affirmed.

AFFIRMED