Jerry CHARLES, Plaintiff–Appellant,

v.

Matthew FRANK, et al., Defendants–
Appellees.

No. 04–1674.

United States Court of Appeals,
Seventh Circuit.

Submitted June 3, 2004.[*]

Decided June 9, 2004.

Rehearing Denied July 1, 2004.

Jerry Charles, Oshkosh, WI, pro se.

Peggy A. Lautenschlager, Office of the Attorney General, Department of Justice, Madison, WI, for Defendants–Appellees.

Before COFFEY, KANNE, and ROVNER, Circuit Judges.

ORDER

Wisconsin inmate Jerry Charles brought suit to overturn a policy that prohibits him from wearing a visible string of Muslim prayer beads, or Dhikr, when outside of his cell. The district court granted summary judgment for the defendants, reasoning that the policy substantially burdens Charles's free exercise of religion but is without dispute the least restrictive means of furthering a compelling interest in maintaining prison security and suppressing gang activity. Charles appeals, and we affirm.

Charles, a practicing Muslim confined at the Oxford Correctional Center, uses prayer beads primarily as an *aide-memoire* to

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

assist him in counting prayers, as a Catholic might use a rosary. But Charles insists that *wearing* a Dhikr around his neck is for him—even if not for Muslims generally—a religious exercise. The defendants have always permitted Charles to wear and use his prayer beads in his cell, and to carry and use them outside of his cell so long as they remain unseen in a pocket. The defendants, however, have banned Charles from wearing his Dhikr outside of his cell except when congregating with other Muslims for religious services. Charles submitted evidence that in the past the defendants would not under *any* circumstances permit Muslim inmates to wear prayer beads around the neck in common areas; the defendants maintain that Charles is simply prohibited from wearing *his* Dhikr because its individual beads range in size from ¼ to ½ inch in diameter, and thus it would be visible when draped around his neck, even if worn under his prison-issued shirt. A visible Dhikr, the defendants explain, is disallowed by a Department of Corrections policy, *see* DOC 309 IMP 6A, which limits the display of "religious emblems" and restricts the diameter of any emblem worn like a necklace to ⅛ of an inch. According to Richard Schneiter, the systemwide chief of security for adult prisons in Wisconsin, the ban promotes prison security and discourages gang proliferation and violence. By restricting the display of religious emblems, says Schneiter, the policy discourages gangs from adopting religious symbols as their insignias. Charles, though, claims that keeping him from wearing his Dhikr violates the Free Exercise Clause of the First Amendment as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to cc–5.

Prisoners retain a First Amendment right to practice their religion, but a regulation that infringes an inmate's free exercise of religion will nonetheless survive constitutional challenge if prison administrators can establish that the regulation is a rational means of furthering a legitimate penological interest. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 351–52, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Tarpley v. Allen County, Ind.,* 312 F.3d 895, 898 (7th Cir.2002). RLUIPA, on the other hand, bars a state prison receiving federal funds from implementing general regulations that substantially burden an inmate's "religious exercise" absent a compelling interest, and even then the prison must employ the "least restrictive means" of promoting that interest. *See* 42 U.S.C. § 2000cc–1(a); *see Lindell v. McCallum,* 352 F.3d 1107, 1110 (7th Cir.2003). A prison regulation that survives scrutiny under RLUIPA will also satisfy the First Amendment, so like the district court we turn first to Charles's statutory claim.

RLUIPA defines "religious exercise" more broadly than the First Amendment to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7); *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752 (7th Cir.2003). The district court thus held, and the defendants no longer dispute, that for Charles the act of wearing a Dhikr is a religious exercise regardless whether most Muslims would view the practice as essential to their faith. The district court also held, and again the defendants do not dispute, that preventing Charles from wearing his prayer beads around his neck whenever he chooses imposes a substantial burden on his religious exercise. These questions are not before us. And since suppressing gang activity to promote a secure and safe prison environment is indisputably a compelling interest, *see Bell v.*

*Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Pell v. Procunier,* 417 U.S. 817, 822–23, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Rios v. Lane,* 812 F.2d 1032, 1037 (7th Cir.1987); *see also Sasnett v. Sullivan,* 91 F.3d 1018, 1023 (7th Cir.1996), *vacated on other grounds,* 521 U.S. 1114, 117 S.Ct. 2502, 138 L.Ed.2d 1007 (1997), the only issue here is whether the defendants are furthering that interest through the least restrictive means. The burden of demonstrating that they have chosen the least restrictive means falls upon the defendants, *see O'Bryan v. Bureau of Prisons,* 349 F.3d 399, 401 (7th Cir.2003) (interpreting like element under Religious Freedom Restoration Act), and we review *de novo* whether the defendants satisfied that burden, *see Charles v. Verhagen,* 348 F.3d 601, 606 (7th Cir.2003).

We note at the outset that this might be a very different case if Charles was pressing the broader contention that the prohibition against wearing Muslim prayer beads was absolute, rather than limited only by the constraints of IMP 6A. The defendants' own submissions to the district court suggest that a finder of fact could conclude on this record that the defendants denied Charles permission to wear prayer beads, not because they realized that his own Dhikr was too bulky to satisfy their written policy, but because they had an unwritten practice of refusing all such requests. Nonetheless, the district court understood Charles to complain only that he is being kept from wearing his *preferred* prayer beads, not that he would have been thwarted from wearing a substitute Dhikr had he been willing to obtain a smaller set of prayer beads that satisfy IMP 6A. We cannot say that this construction of Charles's claim is unreasonable, and indeed Charles makes no argument that the district court misconstrued his claim; in fact, he appears to be adamant that the defendants are obligated to let him wear the Dhikr of his choosing.

With that understanding, we agree with the district court that, at least on this record, the defendants established that IMP 6A satisfies the "least restrictive means" standard. Charles has never disputed Schneiter's affidavit testimony that suppressing the open display of religious emblems is necessary to stop gangs from usurping them as indicia of membership. The only way to achieve that objective is to stop altogether the display of artifacts in environs where the religious significance of a particular emblem will not be shared by all and, thus, the message conveyed by the wearer will carry a greater prospect for ambiguity. The challenged policy does no more. *See Young v. Lane,* 922 F.2d 370, 375–77 (7th Cir.1991) (holding that prison's concern that yarmulkes could be used by gangs as form of identification justified prohibition against wearing yarmulkes except in cells and during religious services); *Hines v. South Carolina Dep't of Corrections,* 148 F.3d 353, 358 (4th Cir.1998) (holding that prison's concern that hair length could be used as gang identifier justified grooming policy even though it may have infringed upon inmates religious beliefs); *Hamilton v. Schriro,* 74 F.3d 1545, 1555 (8th Cir.1996) (holding that prison's concern that hair could conceal contraband or serve as gang identifier justified hair length rule). Charles can display his preferred Dhikr in his own cell, and he can carry it and use it at will throughout the prison as long as it remains out of sight in his pocket. And, what is critical here, the defendants now acknowledge that the governing policy allows Charles to *wear* prayer beads around his neck provided that they are small enough to be unobtrusive under his shirt when he is outside of his cell. In this regard, Charles did not contest Schneiter's testimony that Muslim prayer beads complying

with the policy's restrictions on size and composition are potentially available from commercial sources. Accordingly, the district court properly granted summary judgement for the defendants.

AFFIRMED.