In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1627

EUGENE DEVBROW,

*Plaintiff-Appellant*,

*v.*

STEVEN GALLEGOS and JASON SMILEY,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:10-cv-146 — **James T. Moody**, *Judge.*

SUBMITTED OCTOBER 25, 2013[*] — DECIDED NOVEMBER 1, 2013

Before POSNER, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Eugene Devbrow, an Indiana prisoner, challenges the grant of summary judgment against him in this action under 42 U.S.C. § 1983 asserting that prison officials denied him access to the courts by confiscating and

_____

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. See Fed. R. App. P. 34(a)(2)(C).

then destroying his legal papers in retaliation for a prior lawsuit he filed. Because Devbrow failed to show that prison officials actually destroyed his legal documents or took his papers for retaliatory reasons, we affirm.

According to Devbrow's verified complaint, two prison officials at Indiana's Westville Correctional Facility—defendants Steven Gallegos and Jason Smiley—confiscated and destroyed his legal materials after he told Gallegos that unsanitary conditions at the prison could be rectified through a lawsuit. Gallegos promptly ordered Devbrow to his dormitory and grilled him about his pending litigation. Devbrow acknowledged he had lawsuits pending, at which point Smiley ordered a dorm officer—identified by Devbrow only as "Stolls"—to remove all of Devbrow's legal materials and review them for anything pertinent to any litigation that was ongoing. Over Devbrow's protests, Gallegos then told another officer to inventory all of the materials. Devbrow later stepped away from the dorm and, upon his return, discovered that his legal materials were missing—confiscated, he believed, by Stolls.

Devbrow describes these confiscated materials as irreplaceable documents that were needed by his attorney to respond to a summary judgment motion in a pending civil rights suit in the Southern District of Indiana. In that suit Devbrow had charged doctors and a nurse from his former prison with deliberate indifference to a serious medical need (cancer), *Devbrow v. Kalu*, 705 F.3d 765, 766–67 (7th Cir. 2013), and Devbrow insisted that the materials confiscated by Gallegos, Smiley, and Stolls were his only copies of medical records from that prison.

Defendants Gallegos and Smiley eventually sought summary judgment on grounds that they did not destroy Devbrow's legal materials and that their confiscation of excess materials was not in retaliation for his prior litigation. The two officers submitted their own testimony asserting that Devbrow had created a fire hazard by stacking excess property by his bed, that they allowed him to keep some legal materials by his bed, that Devbrow stored the rest of them, and that they were unaware of Devbrow's pending litigation.

The district court construed Devbrow's submissions as raising both access-to-courts and retaliation claims, and granted summary judgment for the two officers. Plaintiff Devbrow, the court determined, failed to provide any admissible evidence to dispute the sworn statements of Gallegos and Smiley denying personal involvement in any destruction of his property. But even if the officers were personally involved, the court added, they would still be entitled to summary judgment because Devbrow did not suffer any actual injury from the destruction and/or confiscation of those documents: Devbrow's deliberate indifference suit had been terminated not on the merits, but on grounds of untimeliness (a finding we later reversed; litigation is ongoing in the district court, see *Devbrow*, 705 F.3d at 770). As for Devbrow's retaliation claim, the court found that Devbrow had not submitted any admissible evidence to discredit the officers' explanation that they had removed his property from the dorm room because it was a fire hazard. The court later denied Devbrow's motion to reconsider, which the court construed as a motion under Federal Rule of Civil Procedure 59(e), because he failed to

show a manifest error of law or fact in its rulings. Devbrow has appealed.

Gallegos and Smiley argue as a threshold matter that we lack jurisdiction to hear this appeal because: (1) the notice of appeal was filed seven days beyond the 28 days allowed after entry of judgment; and (2) Devbrow's certificate of service accompanying that motion did not comply with Federal Rule of Appellate Procedure 4(c) because it was unsigned and undated, and failed to state that he intended to use the prison's internal mailing system. We asked Devbrow to file a notarized statement specifying the date the notice of appeal was deposited in the prison's internal mail system and stating whether first-class postage was prepaid. See Fed. R. App. P. 4(c). Devbrow's notarized response asserted that he placed his motion to reconsider in the prison mail system, postage prepaid, on January 24, 2013. That made his motion timely under Rule 59 and tolled his time to file a notice of appeal until the district court decided his motion to reconsider. See Fed. R. App. P. 4(a)(4)(A)(iv). The appeal was timely, and we have jurisdiction.

On appeal Devbrow first argues that the district court wrongly struck an exhibit he had submitted because it was not properly authenticated. In opposition to the officers' motion for summary judgment, Devbrow had submitted a document that appeared to be an email sent from Gallegos to the law librarian supervisor stating that Devbrow's "stacks of legal personal property" in his "bed area" violated the prison policy and needed to be inventoried and moved to the "property room." Devbrow believes that this email confirmed retaliatory intent and the destruction of his property. In his view, Federal Rule

of Evidence 901 requires him to show only that the evidence was what he claimed it was (i.e., an email from Gallegos), and he says that he received this document directly from the prison.

The document was properly struck because Devbrow failed to authenticate it. While circumstantial evidence—such as an email's context, email address, or previous correspondence between the parties—may help to authenticate an email, see *United States v. Siddiqui*, 235 F.3d 1318, 1322–23 (11th Cir. 2000), the most direct method of authentication is a statement from the author or an individual who saw the author compose and send the email. See *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012). But Devbrow did not show that either he or anyone else saw Gallegos actually compose or transmit the email, nor did he present any circumstantial evidence like that in *Siddiqui* or *Fluker* to suggest as much.

On the merits, Devbrow argues that the district court erred when it determined that he submitted no admissible evidence of destruction of legal materials. He points to his verified complaint, in which he generally asserts that Gallegos and Smiley confiscated and destroyed his legal materials. To be clear, as a general rule the officers had a right to confiscate his legal materials, leaving him a permissible amount in his cell consistent with safety considerations and prison regulations, but destruction would have been improper if it occurred, and if these defendants caused it.

The district court may have overlooked the fact that Devbrow's complaint was verified. A verified complaint is the equivalent of an affidavit for summary judgment purposes. See

28 U.S.C. § 1746; *Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996); *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003); *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994–95 (8th Cir. 2001). To prevail in his access-to-courts claim, Devbrow needed to submit evidence showing that he suffered actual injury—i.e., that prison officials interfered with his legal materials—and that the interference actually prejudiced him in his pending litigation. See *Lewis v. Casey*, 518 U.S. 343, 348 (1996); *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004); *Johnson v. Barczak*, 338 F.3d 771, 772 (7th Cir. 2003). But Devbrow offers nothing to show his legal materials were actually destroyed by anyone, let alone by these defendants, except his own conclusory assertions in his verified complaint. He has not asserted, for example, that he tried to exchange some of the material left in his cell for some of the confiscated material, and his request was refused because the confiscated materials were not available. Nor has he identified any basis for personal knowledge for a claim that these defendants were responsible for any such destruction.

Devbrow was not injured when officials confiscated his documents because temporary confiscation of documents does not show, without more, "a constitutionally significant deprivation of meaningful access to the courts." *Hossman v. Spradlin*, 812 F.2d 1019, 1022 (7th Cir. 1987); see *Monroe v. Beard*, 536 F.3d 198, 206 (3d Cir. 2008); *Sowell v. Vose*, 941 F.2d 32, 34–35 (1st Cir. 1991). Devbrow also cannot satisfy the requirements of an access-to-courts claim because he suffered no actual injury, so a grant of summary judgment on this claim for Gallegos and Smiley was proper. See *Christopher v. Harbury*,

536 U.S. 403, 413–15 (2002); *Lewis*, 518 U.S. at 348; *Tarpley v. Allen County*, 312 F.3d 895, 899 (7th Cir. 2002).

Regarding his retaliation claim, Devbrow argues that the district court erred when it overlooked his evidence that the officers failed to comply with regular prison storage procedures for legal materials—procedures that require officials to store an inmate's excess legal materials securely in property storage boxes in the law library. Because his property was destroyed, he says, Devbrow speculates that officers retaliated against him for filing lawsuits and failed to comply with their own storage procedures.

As noted, Devbrow has not come forward with evidence that any materials were actually destroyed. Also, the district court properly found that Devbrow failed to offer evidence that would allow a finding that the officers confiscated Devbrow's legal materials to retaliate against him for suing prison officials. Retaliation requires a showing that the plaintiff's conduct was a motivating factor in defendants' conduct. See *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). But the evidence here indicates only that Gallegos and Smiley removed Devbrow's excessive legal materials to eliminate a fire hazard and to make it easier for officials to conduct searches and inventories of offenders' property during prison searches, not to retaliate against him. Even though Devbrow's verified complaint alleges retaliation, his speculation regarding the officers' motive cannot overcome the contrary evidence that Gallegos and Smiley's actions were benign. See *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (speculation concerning retaliatory motives cannot create a genuine issue of

material fact); *Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001).

AFFIRMED.