NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 14, 2013[*]
Decided November 15, 2013

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-3004

| | |
|---|---|
| ANTOINE SIMMONS, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | No. 10 C 670 |
| GREGORY McCULLOCH and | |
| PRINTISS JONES, | Blanche M. Manning, |
|     *Defendants-Appellees.* | *Judge.* |

**O R D E R**

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

Antoine Simmons was attacked by his cellmate when he was a pretrial detainee at the Cook County jail in Chicago. Simmons sued two guards under 42 U.S.C. § 1983, claiming that they stood by and watched the assault with deliberate indifference to his safety. The district court granted summary judgment for the guards. We affirm the judgment.

The relevant facts are not in dispute. Simmons was confined in a high-security area of the jail in April 2009. He and his cellmate of two or three weeks, Cheo Iburra, had gotten along without incident. On April 14, however, they exchanged words after Simmons told Iburra to stop bullying a detainee in a neighboring cell. A guard (who is not a defendant) saw the exchange and separated them into different cells. Simmons was not afraid of Iburra and never told any staff member that he was. Later that day during recreation hour, Simmons was in the dayroom with another detainee. Iburra unexpectedly ran up behind the other man and sliced him on the neck with a razor. When Simmons tried to run away, Iburra slashed him, too, on his neck and back. Simmons suffered deep cuts to his back as he wrestled Iburra to the floor.

The defendant guards, Gregory McCulloch and Printiss Jones, came on duty after the two prisoners had been sent to separate cells, though Simmons had told McCulloch about the tiff. When Iburra struck, the defendants were monitoring the dayroom from the "bubble," a windowed room sitting five or six feet above the floor. McCulloch immediately made a "10-10" call for backup. Jail procedure prohibits guards from entering the dayroom to stop a fight until a supervisor and more guards arrive. The defendants could see that Iburra was cutting Simmons with a metal object, and they yelled at Iburra to stop and tossed Simmons a blanket so he could protect himself. But the defendants stayed in the bubble until backup arrived. Seven or eight guards then ran out of the bubble and tackled Iburra. Simmons received more than 20 stitches.

In granting summary judgment for the two guards, the district court concluded that a jury could not reasonably find that they should have anticipated Iburra's attack or acted unreasonably by waiting for backup before intervening. After issuing its ruling the court received from Simmons a motion seeking appointment of counsel and another motion seeking leave to subpoena jail records including log books and surveillance videos. The district court denied those motions as "moot."

On appeal Simmons challenges the grant of summary judgment, but we have difficulty seeing any specific argument in his brief. To prevail on his claim of deliberate indifference, Simmons needed evidence that the defendants knew he faced a substantial

risk of serious harm from Iburra and did not respond reasonably to that risk. See *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Guzman v. Sheahan*, 495 F.3d 852, 856, 857 (7th Cir. 2007); *Washington v. LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515, 518 (7th Cir. 2002). On this record a jury could not reasonably find that Simmons satisfied this burden. Simmons did not fear Iburra, and he had never fought with him, or reported being threatened, or asked to be separated. Simmons admits in his deposition that the assault was unexpected, and in fact he was not even Iburra's initial target. At best the evidence shows that Simmons and Iburra had been separated as a preventative measure after a minor dustup that Simmons described as an "altercation" but short of an "argument." Moreover, after Iburra set upon the other prisoner with a razor, it was reasonable for the defendants to call promptly for backup and monitor the fight from the safety of the bubble. See *Shields v. Dart*, 664 F.3d 178, 181–82 (7th Cir. 2011); *Guzman*, 495 F.3d at 858. And though Simmons insists that he was left to fend for himself for 20 to 40 minutes (the defendants testified by affidavit that the incident was over within eight minutes), Simmons did not dispute that McCulloch made the "10-10" call immediately. Delay by the backup team might raise a question about the reasonableness of their response, but not the response of the only guards Simmons has sued.

Simmons next argues that the district court abused its discretion by not conducting a hearing to address his assertions of inadequate access to a law library. Simmons was still at the jail when he litigated this case in the district court, and several times during status hearings he complained to a magistrate judge or the district judge that he was not able to access the library. The magistrate judge asked defense counsel to look into the matter, but apparently Simmons believes that more should have been done. Jailers must give detainees access to a law library or other legal assistance, *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *United States v. Sykes*, 614 F.3d 303, 311 (7th Cir. 2010), and the moving party must show that the lack of access actually injured him, *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Devbrow v. Gallegos*, No. 13-1627, 2013 WL 5873362, at *3 (7th Cir. Nov. 1, 2013). An actual injury would include, for example, a plaintiff's inability to file a complaint, or the dismissal of a lawsuit for not satisfying a technical requirement that the prisoner could not have known because of deficient legal materials. See *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Tarpley v. Allen Cnty., Ind.*, 312 F.3d 895, 899 (7th Cir. 2002). Simmons did not assert concrete harm because of his lack of access to a law library, so his contention that further court intervention was necessary falls flat.

Simmons further contends that the district court erred by denying his motion for leave to subpoena jail records, which the district court did not receive until after

entering judgment for the defendants. That motion is dated before the court ruled and, because of the "prison mailbox rule," might actually have been "filed" before entry of summary judgment. See *Houston v. Lack*, 487 U.S. 266, 276 (1988); *Simmons v. Ghent*, 970 F.2d 392, 393 (7th Cir. 1992). But still it came too late because the deadline for Simmons to respond to the defendants' motion for summary judgment had passed more than a month before he submitted his motion to jail administrators for mailing. Moreover, if Simmons needed additional discovery to oppose summary judgment, he should have filed a motion under Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)), supported by an affidavit, explaining why he could not yet present evidence essential to his opposition. *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662, 665 (7th Cir. 2011); *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006). Simmons did not do so.

Finally, Simmons submits that the district court abused its discretion when it denied as "moot" his belated motion for appointment of counsel. Like the discovery motion, this one was submitted for mailing only after the deadline to respond to the defendants' motion for summary judgment had passed. Simmons had no right to court-appointed counsel for this federal civil suit, see *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006), and he points to nothing in the record establishing that he was prejudiced by the denial, see *Pruitt v. Mote*, 503 F.3d 647, 659 (7th Cir. 2007) (*en banc*). Further, a district court does not abuse its discretion in declining to enlist counsel if the plaintiff made no attempt to secure counsel of his own. *Bracey v. Grondin*, 712 F.3d 1012, 1016 (7th Cir. 2013); *Romanelli*, 615 F.3d at 851–52. The record does not reflect that Simmons tried to retain a lawyer before requesting the court's assistance. Thus, the district court did not err.

Accordingly, we AFFIRM the district court's judgment.