```
┌─────────────────────────────────────────────┐
│              NONPRECEDENTIAL DISPOSITION      │
│  To be cited only in accordance with Fed. R. App. P. 32.1 │
└─────────────────────────────────────────────┘
```

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 12, 2021[*]
Decided April 12, 2021

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-2636

| | |
|---|---|
| JAMES E. CURTIS, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 18-CV-1822 |
| | |
| LISA SCHWARTZ, et al., | William E. Duffin, |
| *Defendants-Appellees*. | *Magistrate Judge*. |

**O R D E R**

While James Curtis was on probation for driving while intoxicated, he repeatedly failed his mandatory alcohol tests. As a result, he was jailed twice and ultimately spent 90 days in a treatment facility. Curtis, who had filed many grievances during his term of supervision, sued his probation officers for retaliation and administrators at the

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Wisconsin Department of Corrections for failing to intervene. The district court entered summary judgment for the defendants. We affirm.

In 2018, Curtis (a Wisconsin resident) was sentenced to 18 months of probation for his third Illinois conviction for driving while intoxicated. At the time he was already on probation in Wisconsin for convictions for skipping bail and driving while intoxicated (his fourth such offense in Wisconsin). As conditions of his Wisconsin probation, he had to abstain from possessing or consuming alcohol and comply with all breathalyzers ordered by his probation officer.

Curtis's term of Illinois probation was transferred to Wisconsin, where he was mistakenly labeled as "Act 100". Act 100 is a Wisconsin policy that applies to certain probationers with multiple Wisconsin convictions for driving while intoxicated; they are supervised by specially trained officers and subject to increased oversight. Curtis was assigned to Lisa Schwartz, who was trained to supervise Act 100 probationers. (Curtis agrees that he was placed in this category but disputes that he met the criteria.)

Schwartz met with Curtis and explained the conditions of his probation, which included alcohol monitoring through regular remote testing with a mobile breathalyzer. A positive result required Curtis to repeat the test every 15 minutes for an hour to assess if his blood alcohol level was changing. Schwartz noted in Curtis's file that he was not actually an Act 100 probationer, but she had added breathalyzer monitoring to enforce the condition that he avoid alcohol, given his history of alcohol-related offenses. That day, Curtis filed a grievance about his transfer to Schwartz's supervision; he complained that her office was "too crowded" and he had to wait 40 minutes to see her.

Four times in the next couple of months, Curtis missed or failed a breathalyzer test, resulting in one warning, two stints in custody, and one period in a rehabilitation facility. First, during the week he initially met with Schwartz, a test detected alcohol in Curtis's system, and he failed to re-test at 15-minute intervals. When he later met with Schwartz, Curtis said that he did not drink alcohol but used alcohol wipes on his face and was exposed to ethanol at work. Schwartz told him that the breathalyzer can signal the presence of alcohol even when the test-taker has not been imbibing but had used a product with alcohol in it. Thus, Curtis was not to use any substance containing alcohol. Curtis took a urine test, which was negative for alcohol, and went home.

A couple of days later, Curtis took the breathalyzer test late and again tested positive for alcohol. A test fifteen minutes later still detected alcohol on his breath.

Curtis told Schwartz that the results were likely from the paint thinner he spilled on himself or the hairspray his barber used. Schultz did not find the excuses credible; she had Curtis placed in custody for three days on a "probation hold."

When Curtis was released, he was briefly transferred to a new probation officer, Debbie Adams. Adams met with Curtis and emphasized that products containing alcohol—including cough syrup, mouth wash, and alcohol wipes—were off limits under the "zero tolerance" policy. Curtis's assignment to Adams was short-lived, but the notes from that period start referring to him as an Act 100 probationer. After a few days, he was transferred back to Schwartz.

Curtis filed a second grievance. He complained about his transfer to Schwartz and to Adams, asserted that the officers had forced him to engage in alcohol monitoring in retaliation for his earlier grievance, and contested the results of the breathalyzer tests.

Soon after, Curtis was late for another scheduled breathalyzer and tested positive for alcohol in four consecutive tests. He explained that he had used hand sanitizer twice that day, but Schwartz disbelieved him: In her experience, when the test detects hand sanitizer, the amount of alcohol registered every 15 minutes decreases at a faster rate than his test results showed. Curtis was arrested and placed in custody for 41 days.

While in jail, Curtis registered more complaints about his supervision. He filed two grievances, asserting that he had not consumed alcohol and that Schwartz had him jailed to harass him for filing grievances. He raised similar concerns in a letter to administrators of the jail and the Wisconsin Department of Corrections.

After his release, Curtis maintained his pattern of multiple late tests, followed by a positive test without the required follow ups. He insisted the results were flawed and likely picking up traces of alcohol from gasoline and mouthwash, but he was arrested again for violating probation. As an alternative to seeking revocation of his probation, Schwartz offered him a place at a treatment facility. Curtis initially agreed but soon wrote to administrators at the Department of Corrections, insisting that he signed the agreement under duress, disputing the test results, and re-asserting that Schwartz was retaliating against him for his grievances. In response, the administrators explained that Schwartz's actions were above board and that Curtis had been arrested because of his violations. Curtis spent 90 days at the treatment facility.

After continuing to write letters and pursue grievances and appeals, Curtis eventually filed this lawsuit. He alleged that Schwartz and Adams had retaliated against him for exercising his First Amendment rights to file grievances by conspiring to take him into custody. *See* 42 U.S.C. § 1983. He also sued the many Department of Corrections administrators who received his grievances and letters, asserting that they knew about the retaliation and failed to intervene. *Id.*

The district court (Magistrate Judge Duffin, presiding by consent, *see* 28 U.S.C. § 636(c)) entered summary judgment for the defendants. It determined that no reasonable jury could conclude that Schwartz or Adams had placed Curtis in custody for complaining about them rather than for violating the alcohol monitoring requirements of his probation. And because there was no constitutional violation, the court continued, the administrators did not fail to intervene to prevent one.

On appeal, Curtis challenges the entry of summary judgment on his retaliation claim. To establish a prima facie case of First Amendment retaliation, Curtis had to produce evidence that his grievances were a motivating factor in Schwartz's and Adams's decisions that led to his custody and placement in the rehabilitation facility. *See Douglas v. Reeves*, 964 F.3d 643, 645–46 (7th Cir. 2020). We review de novo. *Id.* at 645.

We agree with the district court that no reasonable jury could conclude that Schwartz or Adams retaliated against Curtis for filing grievances. The undisputed evidence shows that each time Curtis was placed in custody, the decision was based on objective evidence that he had missed or failed breathalyzer tests in violation of the conditions of his probation. *See Manuel v. Nalley*, 966 F.3d 678, 680–81 (7th Cir. 2020) (search of inmate who filed grievances was not retaliatory where search was based on reports of contraband). Curtis insists that he did not drink alcohol during his probation and that the results were flawed. But that argument misses the point. Whether the officers were correct that Curtis consumed alcohol does not undermine their explanations that they placed him in custody because he violated the alcohol-monitoring rules. *See Mullin v. Gettinger*, 450 F.3d 280, 285–86 (7th Cir. 2006) (decision based on incorrect information is not evidence that the decision was retaliatory). *Cf. Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) (probable cause to arrest defeats retaliatory arrest claims).

Curtis argues that the district court ignored evidence that he should never have been forced to take breathalyzers because he was not an Act 100 probationer. He maintains that Schwartz and Adams categorized him as Act 100 only after he filed his

first grievance, as a way to subject him to the onerous monitoring that allowed the defendants to jail him. But that argument, too, is unavailing. Curtis was mandated to take the breathalyzer tests *before* he was categorized as Act 100 and, indeed, before he filed a grievance against Schwartz. Schwartz explained that condition when she first met with him on August 28, when she noted that he was *not* an Act 100 probationer but that, based on his history of alcohol-related offenses and the condition of his probation that he not possess or use alcohol, he would benefit from regular breathalyzers. Thus, even if Curtis was later mischaracterized as Act 100, that label could not have been part of a retaliatory scheme to force him into alcohol monitoring. And because Curtis filed his first grievance *after* the breathalyzer condition was imposed, the testing requirement itself could not have been a response to the grievance. *See Douglas*, 964 F.3d at 645–46.

Curtis also contends that the district court overlooked the fact that Schwartz did not give him urine tests after his positive breathalyzer results, a measure that he says would have proved he never consumed alcohol. He insists that Schwartz preferred to rush him into custody because he had complained about her. But, despite Curtis's unsupported argument to the contrary, the record shows that Schwartz was not required to use urine tests to corroborate positive breathalyzer results. And speculation about Schwartz's motives is not evidence sufficient to defeat summary judgment. *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013). As the district court stated, Curtis lacks any evidence, such as suspicious timing or disparate treatment, to support an inference that Schwartz was motivated by retaliation. *See Manuel*, 966 F.3d at 680.

Finally, Curtis challenges the decision on his failure-to-intervene claim. But the district court was correct that there can be no liability for failure to intervene if there was no underlying unconstitutional act. *See Gill v. Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). In any case, only persons who cause or participate in a constitutional violation are responsible under § 1983; administrators who review a grievance about a prior act of misconduct do not cause or contribute to the conduct forming the basis of the grievance. *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017).

AFFIRMED