In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3482

MICHAEL HUGHES,

*Plaintiff-Appellant,*

*v.*

GREGG SCOTT, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
3:15–cv-03151-SEM-TSH — **Sue E. Myerscough**, *Judge.*

SUBMITTED MARCH 10, 2016— DECIDED MARCH 23, 2016

Before WOOD, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges.*

POSNER, *Circuit Judge.* Rushville Treatment and Detention Facility is an Illinois state facility for the diagnosis, treatment, and (pending successful treatment) incarceration of persons believed prone to sexual violence. Usually these are persons who have served prison sentences for sex crimes and are considered too dangerous to be allowed to go free after they complete their sentences.

The plaintiff, Michael Hughes, is confined at Rushville because he was found to be a sexually violent person within the meaning of the state's Sexually Violent Persons Commitment Act, 725 ILCS 207. He will remain there unless and until he is found no longer to be such a person—more precisely if it is no longer "substantially probable that [he] will engage in acts of sexual violence." *Id.* at 207/5(f).

This case, brought under 42 U.S.C. § 1983, grows out of several written grievances that Hughes submitted at Rushville complaining of the dental care that he was receiving there. He alleges that a program director named Scott, a grievance examiner named Simpson, and a security therapy aide named Hougas—the defendants in this case—infringed his First and Fourteenth Amendment rights by disregarding his grievances and insulting him into the bargain. See *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). The district judge dismissed Hughes' complaint for failure to state a claim.

Hughes alleges that after he filed the grievances Simpson summoned him to a meeting with herself and Hougas and at the meeting yelled at him and told him that he was "ignorant" and "stupid" and a "moron" and that his life at Rushville would go better if he stopped complaining (a statement that could well be thought a threat). His grievances were never answered, and whenever Hougas crosses paths with Hughes she called him "ignorant."

 Grievances addressed to a government agency are, if intelligible, nonfrivolous, and nonmalicious, petitions for the redress of grievances within the meaning of the First Amendment and are therefore prima facie protected by the amendment. We are given no reason to doubt that Hughes'

grievances fall within the protected scope; though repetitious, their repetition reflected the institution's failure to respond to any of them. We are mindful that for retaliation for filing petitions to be actionable, the means of retaliation must be sufficiently clear and emphatic to deter a person of "ordinary firmness" from submitting such petitions in the future. See, e.g., *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009); cf. *Santana v. Cook County Board of Review*, 679 F.3d 614, 622–23 (7th Cir. 2012). *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), suggests that "simple verbal harassment" of a prisoner does not suffice, and *Antoine v. Uchtman*, 275 Fed. App'x 539, 541 (7th Cir. 2008), that even threats may not suffice. But the abuse to which Hughes was subjected by the defendants and the warning that his life would be better if he stopped filing grievances went beyond simple verbal harassment.

The district judge emphasized that the defendants' actions had not deterred Hughes from filing a lawsuit complaining about the inadequacy of the dental care that he was receiving or from bringing the present lawsuit, which complains not about inadequate dental care but about the defendants' treatment of him, which has been abusive, and of his grievances, which they have ignored. The district judge ignored features of this case that support Hughes' claims. Remember that he's not a prison inmate but a civil detainee, and the Supreme Court held in *Youngberg v. Romeo,* 457 U.S. 307, 321–22 (1982), that "persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." For another thing, it's not obvious that Hughes is a person of "ordinary firmness," as he is being held against his will in a detention facil-

ity for an undetermined length of time—indeed for years already—because of a psychosexual disorder. Cf. *Schultz v. Pugh*, 728 F.3d 619, 621–22 (7th Cir. 2013). He *must* be suffering from some mental disorder; that's a requirement for commitment to Rushville. 725 ILCS 207/5(f). His particular disorder may well be what is called paraphilia. See "Paraphilia," *Wikipedia*, https://en.wikipedia.org/wiki/Paraphilia (visited March 22, 2016). In lay terminology he's a sexual deviant, confined in a facility that is supposed to treat his condition, as well as protect the public from him until he is sufficiently improved that he can be safely released.

Just as police when interrogating children are held to understand the mental and psychological differences between adults and children, see *J.D.B. v. North Carolina*, 564 U.S. 261 (2011), so staff of an institution that houses and treats persons suffering from mental disorders should be held to understand that they are dealing with psychologically impaired persons. The defendants should have known better than to shout at a possibly quite vulnerable person, call him "ignorant," "stupid," and a "moron," ignore grievances filed by him that may be both meritorious and quite serious (neglect of dental care of course can be dangerous), and threaten him with retaliation for his audacity in complaining—all with no suggestion that the complaint lacks merit. Their conduct toward him could well be thought a significant step beyond "simple verbal harassment."

A further wrinkle is that the Illinois Department of Human Services has established elaborate procedures for inmates of Rushville to complain of the treatment they receive. 59 Ill. Admin. Code 299, subpart G; see *Lehn v. Scott*, 2015 Ill. App. (4th) 140415-U (Dec. 30, 2015); *Schloss v. Jumper*, 2014

Ill. App (4th) 121086 (June 5, 2014). Hughes tried to invoke those procedures, without success—the defendants flouted them, in patent disregard of the passage we quoted from *Youngberg v. Romeo*.

But perhaps the most remarkable feature of this case is the defendants' insistence in defiance of the Illinois Administrative Code that Hughes has no need to invoke grievance procedures because he can always sue, as he has done. What makes this contention remarkable is the fact that the interests of Rushville, of the Illinois Department of Human Services, and of the taxpayers of this almost bankrupt state, obviously are best served if grievances are handled at the facility level rather than by the court system, which is far more costly. Does Rushville have an unlimited budget, so that it can pay lawyers to defend against lawsuits brought only because the institution refuses to obey the Administrative Code and respond to Hughes' grievances, preferring instead to ridicule him and drive him to sue Rushville staff?

We don't get it. But we have said enough to require that the judgment of dismissal be vacated and the case returned to the district court to try to make sense of the conduct of the defendants and their institution, and to determine whether they are in fact improperly impeding the plaintiff's constitutional right to petition government for redress of grievances.

REVERSED AND REMANDED