**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 11, 2017[*]
Decided January 12, 2017

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-1396

| | |
|---|---|
| WALTER PEGUES, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois |
| | |
| *v*. | No. 14-cv-3147 |
| | |
| GREGG SCOTT, et al., | Sue E. Myerscough, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Walter Pegues, a civil detainee at Rushville Treatment and Detention Facility, appeals the grant of summary judgment in his suit under 42 U.S.C. § 1983, asserting that the facility's procedure for storing and distributing   shaving razors violated his constitutional rights. He argues, first, that facility officials were aware of but consciously disregarded the risk that he would be infected from a razor contaminated by another detainee with a blood-borne disease and, second, that officials retaliated against him for filing grievances, in violation of his First Amendment rights. We affirm.

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Rule 34(a)(2)(C).

Rushville residents receive a new disposable razor, and dispose of used razors, each week on Sunday. During the week, residents' razors are stored separately in small plastic drawers of the housing unit's control center, where each razor and drawer is individually labeled with the resident's name. When taking out a razor for use, a resident exchanges his ID badge for the razor, and then gets his ID returned when he brings the razor back to the control center.

Pegues testified in his deposition that sometime in 2013, Shan Orrill, a Security Therapy Aide (a facility employee who maintains the safety and security of the facility, residents and other staff), handed him a razor belonging to another resident—a resident who Pegues believes was HIV positive. Pegues realized it was the wrong razor and told Orrill, who took back the razor and handed Pegues the correct one. According to Pegues, Orrill then remarked, "You know what, you should be like some of these other individuals around here, get you a case of MRSA,"[1]  drawing laughter from two other Rushville employees, Investigator Clayton and STA Kerr. Orill, Clayton, and Kerr testified that they did not recall Pegues ever receiving the wrong razor, and denied joking in such a manner.

Pegues also testified that on several prior occasions he had been handed the wrong razor. Rushville, however, had record of only a single incident in which he filed a razor-related grievance—the grievance he filed in May 2013 challenging the safety of Rushville's procedure for storing and handling razors. Any time he was given a razor labeled with someone else's name, Pegues added, he did not use it.

In response to Pegues's 2013 grievance as well as concerns raised by other residents about the facility's razor procedures, Rushville's Program Director Greg Scott asked the facility's nursing director, Danielle Walker, to investigate whether Rushville's procedures for storing and distributing razors raised any medical concerns. Walker undertook an investigation and concluded that the procedure appropriately limited the likelihood that a resident could receive the wrong razor, or that fluids or bacteria could be transmitted between razors. She testified that she was not aware of any resident ever contracting a disease from the improper storage and distribution of razors.

Pegues also asserted that Rushville staff retaliated against him for filing his grievance. He asserted that in April 2015, Orrill wrote a false incident report accusing him of behaving in a threatening manner. The behavior committee found him not guilty

---

[1]  MRSA (Methicillin-resistant Staphylococcus aureus) is a strain of staph infection.

of this charge, but it did find him guilty of insolence, a minor rule violation. Pegues also asserted that Orrill, Kerr, and Clayton harassed him by speaking to him in a manner that made him feel threatened.

Eleven days before the close of discovery, Pegues moved to file supplemental pleadings, *see* FED. R. CIV. P. 15(d), detailing additional alleged retaliation by Scott, Orrill, and Clayton. A magistrate judge denied the motion, agreeing with the defendants that the request was unduly prejudicial since it was so close to the discovery deadline.

The district court eventually granted summary judgment to the defendants. The court concluded that Pegues failed to create a reasonable inference that Rushville's procedure for storing and distributing razors exposed him to a substantial risk of serious harm, or that any defendant was deliberately indifferent to any such risk. Pegues's fears, the court explained, were based merely on speculation and conjecture and were not admissible evidence. Moreover, Pegues could not point to any evidence that any resident had contracted an illness from a razor. As for his retaliation claim, which the district court characterized as "conclusory and undeveloped," the court determined that Pegues provided no evidence that Orrill retaliated against him by making inappropriate remarks about the razor or fabricating the April 2015 incident report. The court concluded further that the retaliatory acts Pegues complained of were not adverse enough to deter a person of ordinary firmness from speaking out, and therefore did not support a retaliation claim.

On appeal Pegues challenges the court's conclusion that Rushville's razor-distribution policy does not pose a serious risk of harm to residents. He points to the website of the Center for Disease Control and Prevention, which states that Hepatitis C can be "infrequently" transmitted through the sharing of razors. Pegues also asserts that he should not have to contract a disease before he brings a claim of deliberate indifference.

Pegues of course need not contract an illness before he can seek relief, but he does have to prove that the current policy poses a substantial risk of harm to his health that the defendants consciously disregarded. *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). As the district court concluded, Pegues cannot meet that standard because the defendants responded reasonably to Pegues' concerns about the razor policy: they had the nursing director conduct an investigation into the policy's safety, and that investigation concluded that Rushville's procedure for storing and labeling razors removed any substantial risk of harm.

Pegues also raises two challenges to the district court's ruling on his retaliation claim. First he asserts that the court overlooked certain evidence, which he understands to include acts of retaliation that he alleged in his response to the Defendants' Motion for Summary Judgment. But the court denied his earlier motion to file supplemental pleadings and therefore declined to consider those additional acts of retaliation. And he cannot point to anything in the record to suggest that the court abused its discretion by denying his motion, *Chicago Reg'l Council of Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011).

Second, Pegues relies on a case of this court's that postdates the district court's order, *Hughes v. Scott*, which concludes that a Rushville detainee who "*must* be suffering from some mental disorder" to be committed there, would not necessarily be considered a person of "ordinary firmness". 816 F.3d 955, 956–57 (7th Cir. 2016). Because he too is a Rushville detainee, he argues that he is more vulnerable to retaliatory acts than a person of ordinary firmness and that the district court erred by analyzing his claim under the conventional First Amendment retaliation standard.

But even if we assume that Pegues should not be considered a person of ordinary firmness for purposes of a retaliation analysis, he has not provided enough evidence to support his retaliation claim. Pegues has not provided evidence to convince a reasonable juror that defendants acted with a retaliatory motive. He testified at his deposition, for instance, that he didn't know why Orrill issued the April 2015 incident report. In addition, the disciplinary board found him guilty of part of the charge, demonstrating that some legitimate reason existed to support the disciplinary ticket. *See Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013) (defendants in a retaliation claim can prevail if they show it was "more likely than not" that the events would have taken place even if there had been no retaliatory motive). Finally, Orrill did not file his incident report until nine months after Pegues initiated this suit, and nine months is not suspicious enough "in and of itself to create a triable issue" on the question of causation. *Kidwell v. Eisenhauer*, 679 F.3d 957, 966–67 (7th Cir. 2012) (two-month interval between protected speech and alleged retaliatory act too removed in time to infer retaliatory motive).

We also have considered Pegues's remaining arguments, and none has merit.

AFFIRMED.