In the

# United States Court of Appeals
### For the Seventh Circuit

No. 15-3525

TERRY C. JOHNSON,

*Plaintiff-Appellant,*

*v.*

ABDI TINWALLA,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:13-cv-03227 — **Sue E. Myerscough**, *Judge.*

ARGUED APRIL 12, 2017 — DECIDED APRIL 28, 2017

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* Terry Johnson, the plaintiff, is an inmate of the Rushville Treatment and Detention Facility— "an Illinois state facility for the diagnosis, treatment, and (pending successful treatment) incarceration of persons believed prone to sexual violence." *Hughes v. Scott*, 816 F.3d 955, 955 (7th Cir. 2016). The defendant, Dr. Tinwalla, is a psychiatrist, employed by Wexford Health Sources, who works at the Rushville facility. The suit charges him with

having violated both the plaintiff's constitutional right to due process of law and Illinois law, by causing the plaintiff to take the antipsychotic drug Risperdal (and for more than a month) without the plaintiff's knowledge or consent. The district judge granted summary judgment in favor of the defendant, precipitating this appeal.

In *Washington v. Harper*, 494 U.S. 210, 229 (1990), the Supreme Court recognized a "significant liberty interest," created by the due process clause of the Fourteenth Amendment, in "avoiding the unwanted administration of antipsychotic drugs"—drugs used to treat mental disorders by "alter[ing] the chemical balance in a patient's brain, leading to changes, intended to be beneficial, in his or her cognitive processes." *Id.* at 221, 229. The Court explained that a person's "interest in avoiding the unwarranted administration of antipsychotic drugs is not insubstantial. The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." *Id.* at 229. One reason is that drugs—including Risperdal—can have "serious, even fatal, side effects." *Id.*; see also Drugs.com, "Risperdal," www.drugs.com/risperdal.html (visited April 27, 2017). Another reason is that altering a person's brain functioning against his will is an intrusion on his liberty—an intrusion that could engender fear that the government was trying to brainwash its citizens. But a prisoner's interest in liberty gives way if the state establishes, by a medical finding, that the prisoner has a mental disorder likely to cause harm to himself or others unless he is treated with an antipsychotic drug. *Washington v. Harper*, *supra*, 494 U.S. at 227, 231.

In *Harper* state law required that any antipsychotic medication forced on a prisoner had first to be prescribed by a psychiatrist and then approved by a reviewing committee composed of a psychiatrist, a psychologist, and a prison official, thus ensuring that the treatment would be ordered against the prisoner's will only if responsibly determined to be necessary given the prisoner's medical needs and the prison's legitimate penological interests. *Id.* at 215, 233. The district judge in this case noted in addition that 59 Ill. Admin. Code § 299.330 gave the plaintiff a "protected liberty interest against the arbitrary administration of psychotropic medication for those individuals involuntarily committed."

Dr. Tinwalla prescribed Risperdal for the plaintiff after the latter complained to him of increased irritability and wanting to assault a staff member and feeling hopeless at times; in addition his medical history revealed erratic and aggressive behavior, and we can assume that these complaints and the medical history justified the prescription. At the appointment with Dr. Tinwalla the plaintiff initially signed a form in which he consented to being treated with Risperdal, but he immediately revoked his consent and scratched out his signature on the form. Underneath Dr. Tinwalla wrote that Johnson had "refused consent after signing it."

Dr. Tinwalla didn't follow Illinois's procedure for ordering forced medication. He just wrote the plaintiff a prescription for the drug, explaining later in an affidavit that he had done this so that the plaintiff could take Risperdal if he felt a need to. Yet he failed to tell the plaintiff about the prescription. That failure had consequences, as we'll see.

The doctor went further and ordered Risperdal "dispensed" to the plaintiff by the nursing staff nightly, even though it is conceded that a basis for compelled administration of antipsychotic drugs (including therefore Risperdal) to the plaintiff did not exist because he had not been found to be dangerous to himself or to others, and so the *Harper* standard for compelled administration of such drugs as Risperdal was not met. And the doctor did not even tell the plaintiff that he'd ordered Risperdal dispensed to him.

At Rushville medication is dispensed to the inmates by nurses who hand out cups, each marked with an inmate's name and containing his allotted pills. The nurse who dispensed Risperdal to the plaintiff did not tell him that the little cup of pills she gave him every night for his high blood pressure, high cholesterol, and stomach ailments now included Risperdal or any other psychotropic drug. And even if the plaintiff noticed an extra pill, it was unmarked and therefore he had no reason to think it treated a condition unrelated to the medical problems that he knew he was taking pills for. Even the nurse who dispensed pills to him didn't know what the new pill was.

So the plaintiff, having refused to take Risperdal as was his constitutional and statutory right in the circumstances, ended up as a result of Dr. Tinwalla's handling of the matter taking the drug without knowing or having any reason to know he was doing so and without having consented to take Risperdal. The statement in the defendant's brief that the plaintiff's "right to refuse medication was never denied" is empty, as the plaintiff was unaware that he was taking the medication, which he had refused. Dr. Tinwalla points out that the plaintiff could have asked the nurse what the new

pill was, but having refused to consent to take Risperdal the plaintiff had no reason to think it would be smuggled without identification into his nightly cup of pills. And anyway the nurse's reply to such a question might just have been: "I don't know."

We mentioned the Illinois law, which Dr. Tinwalla probably also violated. It parallels the standard set forth in the *Harper* decision, ordaining as it does that psychotropic medication "shall not be administered to any resident [involuntarily committed pursuant to the Sexually Violent Persons Commitment Act] against his or her will … unless … [a] psychiatrist [or other physician] determine[s] that the resident [is mentally ill] and the medication is in the medical interest of the resident; and the resident is either gravely disabled or poses a likelihood of serious harm to self or others." 59 Ill. Admin. Code § 299.300(d)(1)(A)(i). The district judge, ignoring the Code, thought it critical that Dr. Tinwalla had not ordered that the plaintiff be *forced* by staff to ingest the Risperdal that the staff provided to him at the doctor's direction; for that meant, the judge said, that "at worst [Tinwalla] metaphorically unlocked the doors to the medicine cabinet and left the room." We don't know what this means, but what we do know is that by placing an unmarked Risperdal pill in the plaintiff's pill cup every night the nurse on duty was unwittingly causing him to take Risperdal against his will, just as if he'd been physically forced to. And she was doing this without knowing the pill was Risperdal—not knowing because Dr. Tinwalla hadn't told her, as he should have done to give the plaintiff a chance to refuse to take it, as was his right and not just his desire.

Nor is this a case merely of negligence on the part of the defendant. Compare *Daniels v. Williams*, 474 U.S. 327 (1986). A jury could reasonably conclude that Dr. Tinwalla had been deliberately indifferent to the plaintiff's right to refuse Risperdal. See *Pabon v. Wright*, 459 F.3d 241, 250–51 (2d Cir. 2006). It could infer that Dr. Tinwalla, no stranger to Rushville, must have known that pills were delivered to the inmates, unlabeled, in little cups. And at the time he wrote the prescription Dr. Tinwalla had recently reviewed the plaintiff's medical records, so he must have known that the plaintiff also received several other pills three times a day. The district judge had no basis for concluding as she did (it was the basis for her grant of summary judgment in favor of the defendant) that at worst Dr. Tinwalla's failure to notify the plaintiff of the prescription "may have been negligent." A jury could reasonably find that failure to have constituted deliberate indifference.

A reasonable jury could also conclude that Dr. Tinwalla had committed the common law tort of medical battery, which the plaintiff charged in his complaint and under Illinois law requires only that the defendant have committed an intentional, unconsented-to act resulting in offensive contact with the plaintiff's body. *Sekerez v. Rush University Medical Center*, 954 N.E.2d 383, 394 (Ill. App. 2011). True, Dr. Tinwalla didn't touch the plaintiff, but "an 'offensive contact' may be established by proof that the defendant intended to cause the plaintiff, directly or indirectly, to come into contact with a foreign substance in a manner which the plaintiff would reasonably regard as offensive." *Id.* That seems an exact description of this case, but was ignored by the district judge.

It remains to note that the plaintiff had no lawyer in the district court. Given the medical issues presented by the case, it would have been a proper case for the district judge to have recruited a lawyer for the plaintiff. Rushville is only a four-hour drive from Chicago, a city crawling with large law firms likely to respond positively to a request by a federal judge to provide a junior lawyer to represent an indigent plaintiff. The firm and the junior lawyer would benefit from the experience obtained by the lawyer in what might well have been his first trial.

To conclude, the district judge erred in granting summary judgment in favor of the defendant, and the judgment therefore is reversed and the case remanded for proceedings consistent with the analysis in this opinion.