**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 14, 2018[*]
Decided June 15, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-2742

| | |
|---|---|
| PETER J. LONG, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 16-cv-149-slc |
| | |
| MICHAEL L. HAMMER, et al., | Stephen L. Crocker, |
| *Defendants-Appellees.* | *Magistrate Judge.* |

## O R D E R

Peter Long, a former Wisconsin inmate, sued prison officials because a prison librarian refused to print letters that Long had drafted about a lawsuit and then, after Long grieved that refusal, the librarian enforced certain library rules against him. Long contends that by not printing his letters and enforcing these rules, the defendants violated the First Amendment by denying him access to the courts and retaliating for

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. APP. P. 34(a)(2)(C).

filing the grievance. The district court dismissed his court-access claim for failure to state a claim for relief and later entered summary judgment on Long's retaliation claim. Because the librarian's refusal to print the letters did not deprive Long of court access, and no reasonable factfinder could conclude that the librarian's conduct would deter a prisoner from engaging in protected speech, we affirm.

While in prison, Long wanted to send to several newspapers letters that he had typed on a computer. In the letters Long asked the papers to publish articles about a civil-forfeiture action that he was defending against two financial institutions. He thought that these articles would pressure the institutions to settle the lawsuit on favorable terms. But a prison librarian, Michael Hammer, refused to print copies of Long's letters. He explained that prison printers could be used to print only "legal," not personal, documents. Long filed a grievance about this matter to no avail.

Over the next eight months, Long and Hammer clashed over Long's use of the library. About a month after Long filed his grievance, Hammer enforced two rules that the library had inconsistently applied in the past. First, Hammer refused to allow Long (and all other inmates) to use the library for periods that they did not sign up for in advance. Second, Hammer did not allow Long (and the other inmates) to use for word-processing purposes computers designated for legal research only. Beyond this rule enforcement, Hammer also "yelled" at Long when he did not leave the library on time and at other times. Long says that Hammer's "behavior and actions were … threatening" when Hammer yelled at him. Hammer also required Long to pay $2.70 for copies that a clerk mistakenly made for Long. (Long challenged this charge and was reimbursed.)

Long eventually filed this suit against Hammer and other prison officials for violating the First Amendment. He alleged that they denied him his right of access to the courts by refusing to print copies of his letters and that Hammer retaliated against him for filing the grievance. At screening, see 28 U.S.C. § 1915A, a magistrate judge (presiding by consent, see 28 U.S.C. § 636(c)(1)) dismissed the court-access claim because it did not contest his sentence or conditions of confinement. The judge later entered summary judgment for Hammer on the retaliation claim, concluding that a reasonable factfinder could not find that the incidents Long complained of would deter a person of ordinary firmness from filing future grievances.

On appeal Long first challenges the dismissal of his court-access claim, but his challenge fails. He maintains that the refusal to print the letters that he wanted to send to the newspapers denied him his right of access to the courts because the refusal impeded his efforts to settle the foreclosure action favorably. He does not state a claim for two reasons. First, court-access claims must allege the deprivation of an opportunity to seek redress *within* the courts. See *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002). Long does not complain about being shut out of court. Instead he alleges only that he lost a chance to engage in out-of-court settlement activity. Second, even if we considered communication with the newspapers to be tantamount to in-court activity, Hammer's refusal to print the letters did not hinder that activity because he still could handwrite and send the letters. See *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996); *Tarpley v. Allen Cnty., Ind.*, 312 F.3d 895, 899 (7th Cir. 2002).

Long turns next to his First Amendment retaliation claim. He contends that the magistrate judge mistakenly concluded that the events he identified (the yelling, the rule enforcement, and the copying charge) would not deter speech. He adds that the magistrate judge wrongly used a subjective perspective—looking to Long's own actions—to determine whether Hammer's conduct would deter an "ordinary" person from First Amendment activity.

A reasonable factfinder could not conclude that any of Hammer's post-grievance conduct would deter a person of "ordinary firmness" from engaging in protected speech. See *Bridges v. Gilbert*, 557 F.3d 541, 546, 552 (7th Cir. 2009). First, Hammer's "yelling" at Long was not unlawfully retaliatory because "simple verbal harassment" is insufficient to deter a person of ordinary firmness from submitting grievances. See *Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016) (quoting *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)); *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) ("Insulting or disrespectful comments directed at an inmate generally do not rise to this level [of an adverse action].") . Second, requiring inmates to sign up for extra library time and to use only designated computers for word processing were "de minimis inconvenience[s]" that likewise would not discourage protected speech. *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). And it "would trivialize the First Amendment" to conclude that a minor copying charge would discourage First Amendment activity when the charge arose from a clerk's mistake and Long was reimbursed for it. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Finally, although the magistrate judge noted that Hammer's actions did not actually deter Long from filing more grievances, the judge used, just as

we have, an objective perspective to evaluate whether Hammer's conduct was unlawfully retaliatory. See *Bridges*, 557 F.3d at 552.

Long responds that the magistrate judge improperly overlooked two material fact disputes when ruling on Hammer's summary judgment-motion, but he is incorrect. First, Long underscores his assertion that when Hammer "yelled" at him for not leaving the library on time, Hammer's "behavior and actions were … threatening." Long argues that a reasonable factfinder could conclude from his assertion of "threatening" behavior that Hammer's conduct would likely deter speech. But this assertion is a conclusion. Long offers no details on what Hammer said or did that was threatening (other than rudely raise his voice), so we cannot evaluate the legal significance of his conduct. Indeed, a threadbare legal conclusion that behavior was "threatening" would be insufficient to survive a motion to dismiss. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such an assertion is no more availing at summary judgment.

Second, Long says that he raised a genuine dispute about whether Hammer had a retaliatory motive when he enforced the sign-up policy for library time because just one month separated his grievance and the enforcement of this rule. But this timing sequence alone is insufficient to establish a triable question about whether Hammer enforced this rule against all inmates in response to Long's grievance. See *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005) (one-month period between protected activity and adverse action does not "create a triable issue").

We have considered Long's other arguments, and none has merit.

AFFIRMED