In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-2639

TAYSHEEDRA D. ALLEN-NOLL,

*Plaintiff-Appellant,*

*v.*

MADISON AREA TECHNICAL COLLEGE, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:18-cv-00216-slc — **Stephen L. Crocker**, *Magistrate Judge.*

ARGUED MAY 19, 2020 — DECIDED AUGUST 5, 2020

Before EASTERBROOK, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* When her teaching contract with Madison Area Technical College was not renewed, Taysheedra Allen-Noll sued her former employer alleging racial discrimination and harassment. After discovery the college moved for summary judgment, but Allen-Noll failed to follow the district court's procedures. The record was largely established by the defendants' submissions, and the college prevailed.

Allen-Noll appeals, challenging the grant of summary judgment and arguing the district court abused its discretion by accepting the college's findings of fact and denying her motion to compel further discovery. We affirm the district court's rulings. This appeal is also frivolous, so we grant the college's request to sanction Allen-Noll and her lawyer.

**I**

As this case comes to us, for reasons discussed later, the factual background described below is based largely on the defendants' evidentiary submissions. *See, e.g.*, *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 788 (7th Cir. 2019).

In January 2009 Allen-Noll, who is African-American, was hired by Madison Area Technical College[1] as a part-time nursing instructor to teach pharmacology and clinical courses. Later that year the college hired her full time and in 2010 she was promoted to the position of "Instructor—Practical Nursing."

Beginning in 2010, Allen-Noll was criticized for her teaching methods. Some students complained to the administration that she was "rude, condescending, and defensive" in class. In 2011 complaints about Allen-Noll resurfaced from students and the tutor assigned to her class. The students complained about Allen-Noll's teaching, assignments, and testing methods. The tutor criticized Allen-Noll for not timely posting grades and making study guides available as well as for failing too many students. Allen-Noll's clinical class also

---

[1] When appropriate we refer to individual defendants; otherwise we use the collective "college."

complained that she failed to follow the rules on cell phone use and did not complete paperwork. To address these issues Allen-Noll was assigned a faculty mentor.

The college has informal and formal processes for employees to complain about discrimination and harassment. Allen-Noll used both. That spring she filed an informal complaint alleging discrimination and harassment as to her clinical teaching assignment, claiming faculty members had teamed up against her to garner student complaints, she was treated differently because of her skin color, and her class load was too high. Mark Lausch was the dean of the college's center for health and safety education and Allen-Noll's immediate supervisor. He met with Allen-Noll and others to discuss her complaint. At Allen-Noll's request Lausch assigned her a new faculty mentor. He also offered to be more involved in department meetings to ensure they were carried out in a civil manner, and he directed that Allen-Noll be assigned a reasonable case load. Lausch emailed Allen-Noll's new mentor that "her issue is that the [] staff simply do not like her. I cannot tell if it is race-related or simply personality conflicts."

Complaints about Allen-Noll's teaching continued in fall 2011. Other faculty said she would not participate in nursing team meetings or volunteer for the extra service expected of full-time faculty. But not all reviews of Allen-Noll's teaching were negative. That fall Lausch observed her teach pharmacology and he wrote that she "did a great job of connecting the points in this lecture with previous lectures and handouts." In this review Lausch did not identify any areas for Allen-Noll to improve her teaching.

In spring 2012 students again complained about Allen-Noll saying she failed to teach necessary skills and played

favorites among students. Twice that semester Lausch told Allen-Noll about these complaints, but she denied them and accused others of "hostile, over scrutinizing and undermining behavior." Lausch explained to her that the comments he received from students were unacceptable and that he did not understand why so many students made these remarks if they were incorrect.

Mounting concerns about Allen-Noll's teaching led Lausch to contact the college's human resources department. He was advised to document any issues she had, identify clearly for her any deficiencies, and offer her assistance. The defendants addressed their concerns about Allen-Noll's teaching in two ways. Lausch told her that her performance needed to improve or she could face discipline and her contract may not be renewed. And in May 2012, the college placed her on a performance improvement plan used to identify problematic areas, measure the outcomes sought, and list the assistance the college offered. Allen-Noll's plan covered four categories: classroom instruction, clinical teaching, peer relations, and general expectations.

Allen-Noll emailed Lausch with questions about this plan. He responded that his positive in-class observation of her did not reflect the college's overall assessment of her performance, and that the pattern of student complaints about her teaching was worrisome. Allen-Noll responded with a 163-page rebuttal in which she did not take responsibility for the deficiencies listed in the plan, she shifted blame to others, and she pointed to others' alleged performance problems.

Allen-Noll's performance did not improve that fall, so in December 2012 Lausch placed her on a second plan containing the same four categories of deficiencies and added a fifth

that listed student complaints since the last plan. Those complaints included that during class she just read off her Power-Point presentations, and that she became defensive when asked why she stopped giving out study guides.

In spring 2013 Lausch observed Allen-Noll teach her pharmacology class and he complimented her. But that fall one student withdrew from the nursing program, describing Allen-Noll's course as a toxic environment that did not allow him to learn. Students continued to complain about her, on topics ranging from inappropriate class discussion to posting grades late.

The release of grades became an issue when Allen-Noll administered a test four days before a course withdrawal deadline. Because most of her students were failing the course, Allen-Noll was asked to post the test grades before that deadline. She said she could not guarantee she would do so. Lausch directed her to release the grades before the students had to decide whether to withdraw. Allen-Noll complied, but she considered the request and accompanying correspondence harassing and discriminatory. At Allen-Noll's request, she, Lausch, the faculty union president, and a human resources representative met to discuss her concerns. Allen-Noll was told that because she was on a performance improvement plan, she was subject to more supervision than other faculty.

Allen-Noll was placed on a third plan in December 2013. That listed deficiencies needing improvement—instruction, peer relations, and general expectations. It also described the assistance the college could give Allen-Noll, including twice monthly meetings with her faculty mentor. As that mentor described those meetings, Allen-Noll was arrogant and belligerent, gave one-word answers to questions, and claimed not

to understand why they were meeting. She eventually cancelled the remaining scheduled meetings.

Allen-Noll filed a formal discrimination complaint with the college in January 2014. She alleged that because of her race, Lausch singled her out for questioning about the student who left the nursing program, directed her but not other instructors to post grades by a specific date and time, and removed her from a clinical teaching site. Allen-Noll also alleged that because of her race another faculty member commented negatively and falsely to Allen-Noll's supervisor. In the formal complaint Allen-Noll made many of the same allegations raised in her informal complaint.

Because Allen-Noll had not remedied the deficiencies listed in her three plans, in March 2014 Lausch recommended that her contract not be renewed. When the college's board of trustees gave Allen-Noll notice why her contract was not being renewed, she requested a private conference with the board. Lausch presented the board with a nearly 80-page report chronicling Allen-Noll's performance issues and describing the college's efforts to improve Allen-Noll's performance. The board voted 6-2 not to renew her teaching contract. Allen-Noll later testified at her deposition that she was not aware of any board member having any racial bias against her.

Allen-Noll pursued administrative remedies before the Wisconsin Equal Rights Division, then she filed this suit against the college, Lausch, and other individual defendants. She claimed that because of her race she was discriminated against and harassed, subjected to different terms and conditions of employment, and terminated because she complained about her treatment. The defendants moved to dismiss her complaint, which the district court granted in part, allowing

select claims to proceed: a Title VII claim against the college and its board; a racial discrimination claim against the college, its board, and Lausch under 42 U.S.C. § 1981; an equal protection claim against Lausch; and a due process claim against Lausch and the board's chair.

After discovery, and on the same day, each side filed motions. Allen-Noll moved to compel Lausch for a second deposition and for the college to produce further documents. The district court denied Allen-Noll's discovery motion (as well as a motion to reconsider) concluding that she had not shown shortcomings in the defendants' discovery production. For having to respond to the motion to compel, Allen-Noll and her counsel were ordered to pay the college's attorneys' fees and costs of over $14,000 under Federal Rule of Civil Procedure 37(a).

The college moved for summary judgment. The district court's summary judgment procedures—incorporated in its preliminary pretrial conference order which the parties received at the beginning of the litigation—require a party opposing summary judgment to "[a]nswer each numbered fact proposed by the moving party in separate paragraphs, using the same number." To dispute a proposed fact, the non-movant must "state [its] version of the fact and refer to evidence that supports that version." The non-movant can also offer its own proposed findings of fact, citing to admissible evidence in the record, if necessary to defeat summary judgment. "Unless the responding party puts into dispute a fact proposed by the moving party, the court will conclude that the fact is undisputed." In its procedures the court warns the parties that it "will not search the record for evidence" and it "will not

consider any factual propositions … that are not supported properly and sufficiently by admissible evidence."

Allen-Noll responded to the college's summary judgment motion, but barely. Her brief contained a single page of legal argument. While she filed her own declaration, rather than respond to each proposed finding of fact as the district court's summary judgment procedures required, she submitted a photocopy of those proposed findings with question marks, underlining, and some illegible handwritten notes in the margins. Three days later her counsel filed a declaration submitting record excerpts in support of her opposition brief.

The district court granted the college summary judgment on Allen-Noll's remaining claims, ruling that she had failed to "provide a coherent or meaningful response to any of the defendants' proposed findings of fact." She also "did not file any proposed findings of fact of her own citing to her own affidavit or any other admissible evidence." Given plaintiff's failures, the district court "accepted most of defendants' proposed facts as undisputed." After reviewing those facts, the court reasoned that "[a]part from conclusory allegations and her own speculation about defendants' motives, Allen-Noll has not adduced any admissible evidence that her performance was called into question and that she was eventually terminated either because of her race or because [of] her complaints of racial harassment and discrimination."

Allen-Noll appeals the district court's application of its summary judgment procedures, its grant of summary judgment to the college, as well as the denial of her motion to compel.

**II**

The district court accepted the college's proposed findings of fact on summary judgment as largely undisputed. This followed from that court requiring compliance with its local summary judgment procedures, and its conclusion that Allen-Noll provided no coherent or meaningful response to the defendants' proposed findings of fact. Allen-Noll disagrees with that conclusion, asserting she disputed many of defendants' proposed facts and opposed them with admissible evidence.

This court has repeatedly recognized that district courts may require exact compliance with their local rules. *Hinterberger v. City of Indianapolis*, 2020 WL 3980690, *3 (7th Cir. July 15, 2020) (and citations therein). This includes local rules governing summary judgment. *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010); *Hedrich v. Bd. of Regents of Univ. of Wis. Sys.*, 274 F.3d 1174, 1178 (7th Cir. 2001). We review for abuse of discretion the district court's decision to enforce its local rules, *McCurry*, 942 F.3d at 787 n.2 (citing *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)), and we give a district court's interpretation of its rules considerable weight. *Hinterberger*, 2020 WL 3980690, *3.

While Allen-Noll filed a brief in response to defendants' motion for summary judgment, her opposition to the defendants' proposed findings of fact—her counsel sometimes refers to it as "disputes"—did not comply with the district court's summary judgment procedures. Those rules are succinct (five pages long), crystal clear (even giving examples), and not onerous. They direct the opposing party to respond to each of the movant's factual paragraphs. Allen-Noll's attorney

responded by submitting a photocopy of the college's re-sponse. It was silent on a vast majority of the defendants' pro-posed findings of fact. Those it did reference it did so inscru-tably, with question marks, underlining, and illegible com-ments in the margins handwritten by Allen-Noll's counsel.

The defendants proposed 261 findings of fact. At oral ar-gument before this court, Allen-Noll's counsel said 89 of those are disputed. But it is impossible to tell from Allen-Noll's sub-mission the proposed findings with which she disagrees. The district court could not figure it out, and the court's proce-dures expressly state it "will not search the record for evidence." Yet that is what plaintiff asks. Illegible notes, hand-written in the margins, do not comply with the district court's summary judgment procedures. We conclude that the district court did not abuse its discretion when it ruled that Allen-Noll failed to deny or meaningfully dispute the defendants proposed findings of fact.

Next is Allen-Noll's challenge to the district court's grant of summary judgment, which we review de novo. *McCurry*, 942 F.3d at 788. While her claims are imprecise, it is fair to conclude they allege racial discrimination by disparate treat-ment, retaliation, and potentially by a hostile work environ-ment in violation of Title VII, § 1981, and the Equal Protection Clause of the Fourteenth Amendment.

Summary judgment for the college should be reversed, Al-len-Noll submits, because her declaration and exhibits intro-duced through her counsel's affidavit create genuine disputes of material fact. But Allen-Noll filed her declaration late, and it contradicts her previous sworn testimony, so the sham affi-davit rule applies. *See Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015). The declaration also repeats conclusory allegations

from the complaint, disconnected from the evidence, which does not defeat summary judgment. *Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001). And submitting exhibits through affidavit of counsel would have required the district court to search the record and identify disputes for Allen-Noll, a task not required by summary judgment procedures.

The primary adverse employment action Allen-Noll claims she suffered was the college's decision not to renew her contract. She has offered no evidence this was because of her race, or in retaliation for her internal discrimination complaint. Her allegations of racial discrimination and retaliatory termination are unsupported by any facts. In her briefs Allen-Noll paints a vivid picture of a "conspiracy" among the faculty at the college to remove her, claiming there was an "antebellum" climate where a racist "cabal" of "elite Caucasians" were attempting to rid the campus of Black people. But other than Allen-Noll's own conclusory assertions, there is no evidence in the record to support her statements.

The record contained only one reference to a comment about race, in an email Lausch sent to Allen-Noll's new faculty mentor in spring 2011. After Allen-Noll had first told Lausch that she believed her colleagues were racially discriminating against her, Lausch mentioned to Allen-Noll's new mentor that the faculty did not seem to like her, and that he was not sure whether it was related to race. Aside from this instance, which is insufficient to establish an element of any of her claims, the record does not contain any other race-related comments by anyone at the college.

Instead, the evidence shows that for approximately three years the college fielded complaints about Allen-Noll, and

then placed her on plans to identify deficiencies for her and attempt to improve her teaching performance. Eventually, when these efforts failed to succeed due to Allen-Noll's refusals to comply, her supervisor recommended that her contract not be renewed based on her failure to meet reasonable job expectations. The record shows that the college had legitimate performance-based reasons not to renew Allen-Noll's contract. The record is barren of evidence that race played any role in the college's decision not to renew her contract.

Other requirements for Allen-Noll to advance her claims also were not met. She failed to identify a valid comparator who was treated more favorably than her. *Williams v. Office of Chief Judge of Cook County, Ill.*, 839 F.3d 617, 626 (7th Cir. 2016). She also did not show that legitimate, non-discriminatory reasons for not renewing her contract were pretextual. *Andy Mohr Truck Center, Inc. v. Volvo Trucks North America*, 869 F.3d 598, 606 (7th Cir. 2017). Allen-Noll simply failed to produce evidence to establish the elements of her Title VII, § 1981, or equal protection claims.

Her due process claim against Lausch and the chair of the college's board fails as well. She did not have a viable property interest in continued employment at the college, as she was not tenured; indeed, the college has no tenure track. The undisputed facts show that by the series of performance improvement plans, Lausch's continuing efforts at identifying Allen-Noll's deficiencies, and the college's repeated offering of resources and services, she was afforded two full years to improve her teaching, but she did not. She even admitted the college's board was not racially biased. For all these reasons we conclude the court properly granted summary judgment to the college.

Allen-Noll also appeals the district court's denial of her motion to compel, in which she asked that Lausch be ordered to sit for a second deposition, and for the production of personnel files of various college employees and a security report on a classroom disturbance. We review these discovery rulings for abuse of discretion. *Wanko v. Bd. of Trs. of Ind. Univ.*, 927 F.3d 966, 969 (7th Cir. 2019).

The district court demonstrated its patience in a thorough 22-page written opinion and order denying Allen-Noll's motion to compel. On appeal she does not attempt to show how that court abused its discretion; she just asks this court for a different outcome. In the administrative proceeding before this lawsuit, Allen-Noll's former attorney questioned Lausch for more than five hours, covering 145 pages of transcript. Allen-Noll's motion could not identify for the district court a line of questioning not addressed in that first deposition. The district court closely reviewed that transcript and concluded that Lausch's first deposition addressed the facts on which Allen-Noll based her federal claims. As for the documents she requested but did not receive, she addresses those only in passing with an undeveloped argument. Given the district court's efforts and detailed reasoning, it did not abuse its discretion in denying Allen-Noll's motion to compel.

## III

Finally, we move to the question of sanctions. Allen-Noll's appeal has presented problems from the start. Getting her brief filed in this court was a challenge, as four iterations were stricken as procedurally deficient. Eventually, Allen-Noll filed a brief that the clerk accepted, although it contained no statement of facts, *see* FED. R. APP. P. 28(a)(6), and a 30-page

summary of the argument that was hardly "succinct" and "clear" as required. FED. R. APP. P. 28(a)(7).

After merits briefing was complete but before oral argument, and by separate motion, the college sought sanctions against Allen-Noll and her counsel under Federal Rule of Appellate Procedure 38. The college argues Allen-Noll's appeal is frivolous and that an award of sanctions is warranted. Allen-Noll has responded—with some incendiary rhetoric— that the defendants are the parties who should be sanctioned.

Under Rule 38, the court may impose sanctions if an appeal is frivolous. That standard is met when "the appellant's claims are cursory, totally undeveloped, or reassert a previously rejected version of the facts." *McCurry*, 942 F.3d at 791 (citing *Jaworski v. Master Hand Contractors, Inc.*, 882 F.3d 686, 691 (7th Cir. 2018)). An appeal can also be frivolous if it "rehashes positions that the district court properly rejected" or "when it presents arguments that are lacking in substance and 'foreordained' to lose. *Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000) (citations omitted).

Allen-Noll's appeal satisfies these criteria. She objects to summary judgment but never explains why she did not produce admissible evidence. Instead, she spends much of her appellate brief describing facts the district court did not even consider. She fails to engage with the district court's explanation for how it employed its summary judgment procedures, and she never analyzes the district court's decision to deem the college's facts undisputed. Her appeal of the denial of her motion to compel repeats a position the district court rejected twice, and she offers nothing more. As this court stated in *Jaworski*, "[t]he purpose of an appeal is to evaluate the reasoning and result reached by the district court." 882 F.3d at 690.

Allen-Noll's appeal fails under that description, as her "arguments, once deciphered, are nothing more than naked assertions." *Id*. at 689.

Sanctions are also warranted here because of the amount of extra work defendants had to perform to defend against Allen-Noll's meritless arguments. *See Ruderer v. Fines*, 614 F.2d 1128, 1132-33 (7th Cir. 1980) (sanctioning appellant for burdening defendants, district court, and court of appeals). For example, the final version of Allen-Noll's brief references "disputes" and included excerpts of an unfiled document in her appendix in violation of Federal Rules of Appellate Procedure 10(a)(1) and 30(a)(1). Sorting through these items created unnecessary work for opposing counsel and this court.

This court recently imposed Rule 38 sanctions in an analogous case, *McCurry*, 942 F.3d 783 (7th Cir. 2019). In *McCurry* this court also considered a racial discrimination allegation that resulted in the district court granting summary judgment to the defendant. Plaintiff appealed, filing a "bizarre appellate brief laden with assertions that have no basis in the record and arguments that have no basis in the law." *Id.* at 791. Our court found that the plaintiff's attorney had advanced "baseless assertions," *id*. at 792, found the appeal frivolous, *id*. at 687, and we ordered sanctions. *Id*. at 792–93.

Similar conduct occurred here. Allen-Noll's brief includes "shockingly irresponsible" and "baseless assertions" about the college crafting a racist conspiracy and cultivating an "antebellum" climate on its campus. *See id.* Even Allen-Noll's sanctions response brief—which fails to even mention Rule 38—engages in inappropriate mudslinging. She claims the college "dance[s] to the *antebellum* music of a kangaroo court band playing to the script of off tune frivolity—deserving of

the boos of sanctions." This opinion will not be burdened with further examples, but it is worthy of mention that the district court warned Allen-Noll and her counsel in its ruling on her motion to compel about the use of unnecessary invective. After wading through the heated rhetoric in Allen-Noll's submissions, the district court cautioned that "the only side tossing around accusations and invectives is plaintiff's." Unfortunately, Allen-Noll and her counsel did not heed this warning in the district court's ruling (after which substantial attorneys' fees and costs were assessed against Allen-Noll for her motion to compel).[2]

The defendants were put to the burden and expense of sorting through and defending against Allen-Noll's patently frivolous appeal, which also needlessly consumed judicial resources. Sanctions are therefore warranted. Pursuant to Rule 38, we order Allen-Noll and her counsel to pay the defendants their reasonable attorneys' fees incurred in the defense of this appeal, plus double costs. The defendants shall submit a statement of their fees and costs within two weeks of the date of this decision, and Allen-Noll shall have two weeks to respond to the defendants' submission.

---

[2] Allen-Noll's attorney before the district court and this court is Rocky L. Coe. He has been previously warned about incendiary rhetoric. In a disciplinary proceeding against him which was dismissed, the Wisconsin Supreme Court publicly admonished him for "unwarranted and unprofessional" and "disrespectful comments." *In re: Disciplinary Proceedings against Rocky L. Coe*, 2003 WI 117, ¶ 41 (2003). That court "strongly advised [him] to curtail his rhetorical style in future court proceedings or risk sanctions" in light of Wisconsin Supreme Court Rule 62.02(1), which provides that Wisconsin lawyers shall at all times abstain from making disparaging or demeaning remarks or comments and abstain from any conduct that may be characterized as uncivil, abrasive, abusive, hostile, or obstructive.

\* \* \*

For the reasons discussed above, we AFFIRM the district court's rulings, and we GRANT Defendants-Appellees' motion for sanctions.