┌─────────────────────────────────────────────┐
│ **NONPRECEDENTIAL DISPOSITION**              │
│ To be cited only in accordance with FED. R. APP. P. 32.1 │
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 22, 2021[*]
Decided December 23, 2021

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 21-1786

| | |
|---|---|
| JIAYI GENG, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of |
| | Indiana, Indianapolis Division. |
| *v.* | No. 1:19-cv-03139-JPH-MPB |
| CARLOS DEL TORO, Secretary of the Navy, | James Patrick Hanlon, |
| *Defendant-Appellee.* | *Judge.* |

**O R D E R**

Jiayi Geng, a woman who worked as an engineer for the United States Navy, received a 14-day suspension for prolonged productivity deficiencies that past

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C). We have substituted Secretary Carlos Del Toro for Acting Secretary Thomas Harker pursuant to FED. R. APP. P. 43(c)(2).

discipline had not rectified. She sued, contesting the Navy's view of her productivity and alleging that the suspension reflected discrimination based on her race and sex in violation of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e–2(a)(1). The district court entered summary judgment for the Navy. Because the Navy had a reasonable and genuine belief in Geng's unremedied lack of productivity, and she supplied no evidence that a comparable worker was treated more favorably, we affirm.

We recount the facts that are relevant to the arguments Geng presses on appeal, in the light most favorable to her. *See Giles v. Tobeck*, 895 F.3d 510, 512 (7th Cir. 2018). During Geng's employment at a naval base in Crane, Indiana, her supervisor, Shawn Graber, repeatedly admonished her about problems with productivity. Warnings to her began in 2015, when Graber started reprimanding Geng for arriving late, misreporting her hours in her timesheet, and sleeping during work hours.

Events worsened in 2017, when Geng received her first suspension. She arrived two hours late to work but falsified her timesheet by stating that she had arrived on time. Graber proposed a three-day suspension to the division manager, who agreed to it. In response, Geng initially insisted that she had arrived on time, but her access card and computer log-in information exposed that she had not. She eventually admitted that she had lied about arriving on time.

Despite the suspension, concerns with Geng continued over the next two years. Graber wrote in two annual performance evaluations that Geng was not completing tasks "in a timely manner." Then, in 2018, several workers advised Graber that Geng was overbilling time to their projects, causing them to exceed their budgets. To evaluate the claim, Graber instructed Geng to log her activities in a spreadsheet—he listed her assigned tasks and the time allotted to each task, and she entered the time that she billed. The system soon exposed several problems. Geng "substantially" exceeded the time allotted to tasks, charged far more time to "overhead" than to actual work, spent over twice the time of the average employee on the assignments, and did not complete them. Graber proposed another suspension for "inattention to duty," this time for 14 days. The division manager approved the suspension, noting that Geng's productivity issues were not new in light of her past performance issues and previous suspension.

An unrelated event occurred during this time. Geng attended a meeting aimed at recruiting women to volunteer for a temporary overseas deployment. She had applied several times but was never selected. During the event, Geng asked questions that other attendees felt raised national security concerns. As a result, officers from the Naval

Criminal Investigative Service and Federal Bureau of Investigation interviewed Geng about her motives. Though no discipline ensued, Geng said that during and after the interview she felt anxious and that she was suspected of treason.

After exhausting her administrative remedies, Geng sued the Navy. She alleged that she received the 14-day suspension because of her race and sex, and that the interview by security officers produced a hostile work environment based on her race and sex. *See* 42 U.S.C. § 2000e–2(a)(1). During discovery, Geng moved to compel production of personnel details about a white female employee whom Geng said the Navy had disciplined for abusing unpaid leave. (The Navy withdrew her telework privileges but did not suspend her.) A magistrate judge denied the motion. The magistrate judge reasoned that the employee was not a suitable comparator to Geng because their infractions were different: the comparator was disciplined for abusing leave without pay, and Geng abused time while she was receiving pay.

The district court later granted the Navy's motion for summary judgment. It concluded that Geng introduced no evidence that her suspension resulted from discrimination, rather than "poor performance that did not improve after several warnings." Geng, it continued, had not identified a suitable comparator who received better treatment—no "critical details" about her proposed comparator's performance allowed the court to conclude they were similarly situated. Further, she had not explained how one interview with security officers created a workplace "permeated with discriminatory intimidation, ridicule, and insult" that could support her claim of a hostile work environment.

On appeal, Geng argues that four errors undermine the district court's entry of summary judgment on her claim about the suspension. To survive summary judgment on that claim, Geng needed to present evidence that would allow a reasonable jury to conclude that her race or gender motivated the Navy to suspend her for 14 days. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573 (7th Cir. 2021).

First, Geng contends that the court should not have evaluated her performance "through the eyes of" Graber because he was the sole source of complaints about her performance, and she believes that he is tainted by discriminatory bias. But the record belies the premise to her argument. Graber instituted the time-tracking system, which objectively revealed the performance failings that led to Geng's suspension, because *several* workers reported in 2018 that Geng's over-billing caused budget problems. Geng replies that former colleagues testified that before 2017 her work was "excellent." But

that testimony describes Geng's work before the documented events in 2018 that led to the 14-suspension. Thus, it does not raise a triable question about the events of 2018. *See Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 959 (7th Cir. 2021).

Second, Geng contends that her performance issues do not justify the suspension because Graber assigned her menial tasks outside of her job description and beneath her level of skill and education. But, even if true, Geng does not offer evidence that Graber assigned her those tasks because of her race and sex. An employer who merely assigns work that an employee does not prefer does not violate Title VII. *See Boss v. Castro*, 816 F.3d 910, 921 (7th Cir. 2016).

Third, Geng argues that she has reasonably disputed whether she "substantially" exceeded the time allotted for tasks because the Navy lacks a precise definition of "substantially" and thus has no objective way to measure productivity. We disagree. The record shows without contradiction that her supervisor gave her specific time goals to finish projects, and she routinely exceeded them. He also compared her performance with similar employees, and she took double the average on those tasks, and even then she did not finish them. In any event, precise objectivity is not essential. The Navy genuinely believed that Geng substantially underperformed, and that is all that Title VII requires. *See Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012).

Fourth, Geng contends that the district court erroneously faulted her for not supplying a suitable comparator. She reasons that the magistrate judge wrongly denied her effort to compel discovery of more details about her proposed comparator; had she received it, she believes that she could have survived summary judgment. We review denials of motions to compel for abuse of discretion, *Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 350 (7th Cir. 2020), and none occurred here. As the magistrate judge reasonably explained, Geng's proposed comparator's infractions were dissimilar to Geng's. The comparator took excessive unpaid leave, while Geng was disciplined for poor performance while on the job on a sustained and repeated basis. Substantially different infractions between two workers justifies foreclosing a comparison of them. *See Abrego v. Wilkie*, 907 F.3d 1004, 1013 (7th Cir. 2018).

Finally, Geng seeks to revive her claim that her interview by security officers produced a hostile work environment. She notes that she told the district court that the investigation made her feel scared and anxious at work. This is not sufficient. To survive summary judgment on a hostile-work-environment claim, Geng needed to present evidence that her work environment was subjectively *and* objectively offensive,

the harassment was based on membership in a protected class, and the conduct was severe or pervasive. *Abrego*, 907 F.3d at 1015. No reasonable jury could make any of these findings. Specifically, it could not find that the interview that Geng describes—asking her what prompted her intrusive questions—was objectively offensive; Geng has not suggested the interview was motivated by her race or gender; and as a single conversation it was not severe or pervasive harassment. *See, e.g.*, *Boss*, 816 F.3d at 920–21 (collecting cases and contrasting isolated incidents that did not create hostile work environment with repeated incidents that did).

We have considered Geng's remaining arguments, and none has merit.

AFFIRMED