NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 16, 2022[*]
Decided May 24, 2022

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-2761

| | |
|---|---|
| NATE A. LINDELL, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 18-cv-2027 |
| ANTHONY MELI, *et al.*, *Defendants-Appellees*. | Lynn Adelman, *Judge*. |

**O R D E R**

Nate Lindell, a Wisconsin prisoner, appeals from the entry of summary judgment on his claims that prison officials falsely disciplined him in retaliation for exercising his First Amendment rights and denied him due process in the disciplinary

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

proceedings. The district court concluded that no reasonable jury could find that the defendants were motivated by retaliation or that Lindell was denied the process he was due. We affirm.

Lindell's suit arises from his stay at the Waupun Correctional Institution in 2013. He maintains that prison staff there followed a practice of performing inappropriate strip searches and body-cavity searches on inmates. In August, he helped another inmate write a grievance about a staff-assisted strip search. One prison guard, he says, "made an aggressive offer to take [him] for a walk." Because Lindell was in a segregation unit, he was not allowed to go for "walks." And leaving the unit would require him to be shackled, handcuffed, and strip searched. Based on the guard's statement and tone, Lindell suspected that the overture was a concocted excuse to perform "an abusive/retaliatory staff-assisted strip search."

Lindell decided to complain about the guard's actions via the prison's hotline for reporting violations of the Prison Rape Elimination Act (PREA). 34 U.S.C. §§ 30301–30309. He left a recorded statement that a guard "intended to abuse his authority by doing a staff-assisted strip search." A prison staff member retrieved the recording and summarized Lindell's call as reporting a "verbal altercation" with a guard, after which, later that night "the captain took him out of his cell for no reason" with the "intent … to sexually abuse him."

A copy of the report of Lindell's PREA complaint was provided to the prison's security director, Anthony Meli, who initiated an investigation. A PREA investigator, Bill Searls, determined that the captain on duty on the night in question was Captain James Olson. Searls tried but was unable to interview Lindell: For privacy reasons the interview could not take place in front of Lindell's cell, and Lindell refused to talk to Searls away from his cell because leaving would subject him to a strip search. Searls noted Lindell's refusal in his report and determined that the complaint was unfounded.

Based on Searls's report, Meli determined that Lindell's PREA complaint violated a Department of Corrections rule prohibiting inmates from lying about staff members. *See* Wis. Admin. Code § DOC 303.271 (2013) (forbidding inmates from making "a false written or oral statement about a staff member which may affect the integrity, safety, or security of the institution or staff" if the false statement was made outside the complaint review system). In a conduct report, Meli charged Lindell with violating this rule.

A disciplinary hearing on the charge ensued. Lindell asked that the recording of his PREA complaint be played, or a transcript be provided, but he was informed that the recording no longer was available. (Calls to the PREA hotline routinely were deleted after being retrieved and summarized.) Lindell submitted a written statement denying that he ever complained about Captain Olson. Lindell clarified that his complaint concerned a prison guard, whom he suspected of wanting to sexually abuse him—as had been the case with other staff members working in the segregation unit. Meli and another officer testified in person. The hearing officer, Captain John O'Donovan, found it more likely than not that Lindell had "communicated a false statement about staff in stating that a captain's intent in taking him out of a cell was to sexually abuse [him]." O'Donovan sentenced Lindell to 360 days in disciplinary segregation.

Lindell sued Meli, O'Donovan, Searls, and others under 42 U.S.C. § 1983 for violating his rights under the First and Fourteenth Amendments. He argued that Meli and O'Donovan retaliated against him for exercising his First Amendment right to make a PREA complaint when they filed a false disciplinary charge and wrongfully found him guilty. Searls, he added, retaliated against him by requiring him to leave his cell and submit to a strip search before an interview. Lindell also asserted violations of his due-process rights in connection with the proceedings, including insufficient evidence to support the outcome.

The defendants moved for summary judgment, first, on Lindell's retaliation claims, and the court granted the motion. The court concluded that Lindell could not establish a prima facie case of retaliation because no reasonable jury could find that Meli and O'Donovan were motivated by retaliation rather than a genuine belief that Lindell had lied about a staff member removing him from his cell with intent to sexually abuse him. The court explained that Meli based his conclusion on the summary of the recorded PREA call, as well as Lindell's refusal to be interviewed about the allegations. As for O'Donovan, the court concluded that he was justified to find Lindell guilty based on the frivolousness of his PREA complaint ("so clearly lacked merit") and Lindell's failure to present evidence suggesting that anyone removed him from his cell in order to sexually abuse him. Further, Searls had "objectively legitimate reasons" for insisting that Lindell be interviewed away from his cell—for example, preventing other inmates from overhearing the interview.

The defendants later moved for summary judgment on Lindell's due-process claims, and the court granted this motion as well. The court concluded that the outcome of the disciplinary proceedings was supported by "some evidence." The court pointed

to the summary of Lindell's PREA call, which described Lindell's accusation that "the captain" removed him from his cell to sexually abuse him; to evidence that Olson was the captain on duty that evening; to Lindell's written statement that his accusation was directed at a guard, not Olson; to Lindell's failure to provide any evidence to support his accusation; and to Lindell's refusal to be interviewed.

On appeal, Lindell first argues that the court erroneously concluded he failed to establish a prima facie case of retaliation against Meli, O'Donovan, and Searls. To make such a case, Lindell needed evidence that he engaged in protected First Amendment activity that was at least a motivating factor in the defendants' decision to take a retaliatory action. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). With regard to Meli and O'Donovan, Lindell urges that the PREA call necessarily was a motivating factor in their actions because it sparked the disciplinary proceedings. Lindell further challenges the sufficiency of their evidence to conclude he was lying, given that they had not heard the PREA call, and the written summary of the call inaccurately reported that he had accused "the captain" instead of a guard.

The district court appropriately entered summary judgment for Meli and O'Donovan on Lindell's retaliation claim because he introduced no evidence that protected First Amendment activity motivated their decisions to initiate and impose discipline. Although making a PREA complaint may be constitutionally protected activity, lying about correctional staff is not. *See Hasan v. U.S. Dep't of Lab.*, 400 F.3d 1001, 1005 (7th Cir. 2005). Lindell's claim fails because Meli and O'Donovan "presented uncontradicted evidence that they punished him not because he tried to exercise free speech but because his accusation was a lie." *Id.* (affirming summary judgment for prison staff who disciplined prisoner for filing grievance that falsely accused guard of having tampered with his typewriter). Meli and O'Donovan had no reason to disbelieve the summary of Lindell's PREA call or Searls's report, which characterized Lindell (1) as accusing the captain of taking him out of his cell to sexually abuse him and then (2) refusing to support that accusation through an interview with investigators. That the call summary may have been inaccurate does not raise a fact question about Meli's or O'Donovan's true motive.

As for his retaliation claim against Searls, Lindell argues that the district court wrongly assumed that Searls had legitimate reasons for insisting that he leave the unit to be interviewed, and thereby endure a strip search. But Searls introduced evidence that privacy concerns justified the need for the interview to be conducted away from Lindell's cell. Lindell speculates that Searls's real motive was retaliation, but speculation

about retaliatory motives cannot create a genuine issue of material fact. *See Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013).

Lindell also argues that the district court erroneously entered summary judgment on his due-process claim that there was insufficient evidence to support the outcome of the disciplinary proceedings. He again largely relies on the absence of a recording of his call and asserts that the inaccurate summary was unreliable hearsay.

In his reply brief, Lindell argues that a new development in his disciplinary case undermines the district court's determination that "some evidence" supported the outcome of his disciplinary proceedings. In March 2022, while this appeal was pending, the warden of Waupun resolved in Lindell's favor his long-delayed appeal of the disciplinary charges. The warden reversed the hearing officer's decision, finding:

> The report fails to meet any standard of evidence that would establish a preponderance of evidence that the violation occurred. A statement reported by the author that investigators deemed Lindell's claim as "unfounded" does not constitute evidence. No other statements or evidence are presented for consideration.

Ordinarily, we do not consider documents that were not presented to the district court to be part of the record on appeal. *See Midwest Fence Corp. v. United States Dep't of Transportation*, 840 F.3d 932, 946 (7th Cir. 2016); *but see Brown v. Watters*, 599 F.3d 602, 604 n.1 (7th Cir. 2010) (supplementing record on appeal with materials not before the district court "in order to properly review" due process challenges). Even if we consider the new documents, though, the warden's ruling does not affect our analysis. The warden was applying a preponderance-of-the-evidence standard, but we affirm prison disciplinary decisions if they are supported by "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (describing "some evidence" as a "less exacting" standard than preponderance of the evidence). The evidence here was enough to clear that low bar: the written summary of Lindell's PREA call, his refusal to be interviewed, and his failure to introduce any evidence to support his accusation. The warden's reversal thus does not establish that the proceedings were constitutionally deficient.

We close by briefly addressing several of Lindell's procedural arguments. He challenges, for instance, the denial of his motion to compel the defendants to produce documents related to other inmates who were disciplined after filing PREA complaints.

But the district court acted within its discretion in ruling that the requested documents were insufficiently relevant to Lindell's claims and would violate other inmates' confidentiality. *See Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 350–51 (7th Cir. 2020). Lindell next argues that the district court improperly denied his request for an extension of time—based on a lockdown caused by the COVID-19 pandemic—to file a motion for summary judgment. *See* FED. R. CIV. P. 6(b)(1)(B). But the court appropriately exercised its discretion to deny this motion because Lindell had not sought an extension until after the deadline, nor did he provide any reason that would establish excusable neglect. *See Bowman v. Korte*, 962 F.3d 995, 997–98 (7th Cir. 2020).

AFFIRMED